



Alan M. Anderson
Renee L. Jackson
Sharna A. Wahlgren
FULBRIGHT & JAWORSKI L.L.P.
225 South Sixth Street, Suite 4850
Minneapolis, MN 55402-4320

Mark E. Ungerman
FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2615

Robert N. Gawlas, Jr.
ROSENN, JENKINS & GREENWALD, L.L.P.
15 South Franklin Street
Wilkes-Barre, Pennsylvania 18711-0075

Attorneys for Defendant Bridgeport Fittings, Inc.

FILED
SCRANTON

JAN 1 5 2003

Per_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Arlington Industries, Inc., )<br><br>Plaintiff, )<br><br>vs. )<br><br>Bridgeport Fittings, Inc., )<br><br>Defendant. ) | Civil Action No. 3:CV01-0485<br><br>(Judge Christopher C. Conner) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING ARLINGTON'S CLAIM OF WILLFUL INFRINGEMENT AND TO LIMIT THE DAMAGES PERIOD

30385212.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................i

PROCEDURAL HISTORY ..............................................................2

STATEMENT OF ISSUES...............................................................3

STATEMENT OF UNDISPUTED FACTS .........................................3

ARGUMENT...................................................................................4

    I.    Arlington Cannot Show By Clear And Convincing Evidence That Bridgeport Willfully Infringed Arlington's Patents....................4

        A.    Willfulness Cannot Be Shown Where Bridgeport Relied Upon Competent Attorney Opinions.......................................5

            1.    The Attorneys Were Highly Qualified To Provide The Opinions.................................................................5

            2.    The Opinions Were Competent .....................................7

            3.    Bridgeport Obtained Three Opinions From Two Separate Patent Counsel Prior To Marketing Or Selling Any Of Its Allegedly Infringing Devices .........15

        B.    Bridgeport Reasonably Relied On These Opinions ................17

        C.    Kiely's Notes Are Irrelevant To The Allegation Of Willful Infringement................................................................19

    II.    Arlington May Not Recover Damages Related To Either The '050 Or '164 Patents For Sales Made Prior To January 3, 2001.......23

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amsted Indus., Inc. v. Buckeye Steel Castings Co.,*
   24 F.3d 178 (Fed. Cir. 1994)................................................................. 23

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................................... 4

*Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.,*
   34 F.3d 1048 (Fed. Cir. 1994)......................................................... 5, 20

*Graco, Inc. v. Binks Mfg. Co.,*
   60 F.3d at 793........................................................................... 8, 9, 22

*Jurgens v. CBK Ltd.,*
   80 F.3d 1566 (Fed. Cir. 1996)............................................................ 5

*Lans v. Digital Equip. Corp.,*
   252 F.3d 1320 (Fed. Cir. 2001)......................................................... 24

*Maxwell v. J. Baker, Inc.,*
   86 F.3d 1098 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997)................. 23

*Ortho Pharm. Corp. v. Smith,*
   959 F.2d 936 (Fed. Cir. 1992)...................................................... passim

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.,*
   788 F.2d 1554 (Fed. Cir. 1986)......................................................... 8, 9

*Read Corp. v. Portec, Inc.,*
   970 F.2d 816 (Fed. Cir. 1992)...................................................... passim

*SRI Int'l v. Advanced Tech. Labs., Inc.,*
   127 F.3d 1462 (Fed. Cir. 1997)........................................................... 4

*State Indus., Inc. v. A.O. Smith Corp.,*
   751 F.2d 1226 (Fed. Cir. 1985)..................................................... 19, 20, 21

*Underwater Devices, Inc. v. Morrison-Knudsen Co.,*
   717 F.2d 1380 (Fed. Cir. 1983)....................................................... 8, 15

*Westvaco Corp. v. International Paper Co.,*
   991 F.2d 735 (Fed. Cir. 1993)..................................................... 8, 13, 21

**Statutes**

35 U.S.C. § 102 .................................................................................. 2, 3
35 U.S.C. § 103 ..................................................................................... 2
35 U.S.C. § 112 .................................................................................. 2, 3
35 U.S.C. § 287 .................................................................................. 23

Defendant Bridgeport Fittings, Inc. ("Bridgeport") submits this memorandum in support of its motion for summary judgment dismissing the claim of willful infringement asserted by Plaintiff Arlington Industries, Inc. ("Arlington"), and in support of its motion to limit the damages period. Arlington cannot raise genuine issues of material fact sufficient to prove by clear and convincing evidence that Bridgeport acted in willful disregard of Arlington's patents and that it had no reasonable basis for believing it had a right to sell its products. The undisputed evidence shows that Arlington received advice from two qualified counsel, from two different law firms, *before* selling its allegedly infringing products. In three separate opinions, these two patent attorneys determined that the Arlington patents were invalid and would not be not infringed by the sale of Bridgeport's products. Bridgeport reasonably relied on that advice. Accordingly, Arlington's willfulness claim should be dismissed.

Arlington has never marked a product with the relevant patent numbers. Moreover, the undisputed evidence establishes that Arlington did not give Bridgeport notice of alleged infringement of its patents until January 3, 2001. Accordingly, Arlington may not recover damages from Bridgeport for sales made prior to January 3, 2001, and any claim for damages prior to that date should be dismissed.

## PROCEDURAL HISTORY

Arlington commenced this action on March 19, 2001, alleging that Bridgeport had infringed U.S. Patent No. 5,171,164 ("the '164 Patent") and U.S. Patent No. 5,266,050 ("the '050 Patent"). Bridgeport answered the Complaint on May 1, 2001, denying the material allegations and asserting affirmative defenses, including that the '164 Patent and the '050 Patent were invalid under 35 U.S.C. §§ 102, 103, and 112. Bridgeport also asserted counterclaims for a declaratory judgment that the patents in suit were not infringed or invalid.

On June 20, 2001, Judge Kosik entered a Case Management Order. In July 2002, this action was reassigned to this Court, and a 60-day stay was granted to allow new counsel for Bridgeport to familiarize themselves with the case. On September 25, 2002, a telephone status conference was held. As a result of that conference, the court ordered that remaining discovery be completed by December 2;[1] that any dispositive motions be filed by December 31, 2002; and that trial would commence on April 21, 2003.

---

[1] Some discovery remains to be completed. For example, the parties recently exchanged updated and more complete financial data. Supplemental damages expert reports, and likely supplemental damages expert depositions, have to be exchanged and scheduled. On January 9, 2003, Arlington served an entirely new expert report on the issue of alleged willful infringement. Bridgeport will have to retain an expert to respond to this report, and depositions of these new experts will have to be taken. In addition, Arlington's motion to strike certain amended and supplemental interrogatory answers of Bridgeport is pending.

On December 31, 2002, Bridgeport served and filed motions for summary judgment on the issues of claim construction and non-infringement; invalidity of the '164 Patent and '050 Patent under 35 U.S.C. §§ 102 and 112; and on willful infringement and the damages period. This Memorandum is submitted in accordance with the Local Rules of the Middle District.

## STATEMENT OF ISSUES

1.     Could any reasonable jury find by clear and convincing evidence that Bridgeport willfully infringed Arlington's patents, where it is undisputed that Bridgeport obtained three opinions from two different qualified patent counsel prior to beginning marketing of its allegedly infringing products?

2.     Is Bridgeport entitled to judgment as a matter of law that Arlington may not recover damages for sales of allegedly infringing products made prior to January 3, 2001?

## STATEMENT OF UNDISPUTED FACTS

On December 31, 2002, Bridgeport filed its Statement of Material Undisputed Facts In Support of Motion for Summary Judgement Dismissing Arlington's Claims for Willfulness and for Damages Prior to January 3, 2001 ("Factual Statement"). In this Memorandum, Bridgeport relies upon this Factual Statement and incorporates it by reference.

## ARGUMENT

I.   <u>ARLINGTON CANNOT SHOW BY CLEAR AND CONVINCING
     EVIDENCE THAT BRIDGEPORT WILLFULLY INFRINGED
     ARLINGTON'S PATENTS.</u>

No genuine issue of material fact exists with respect to whether Bridgeport

willfully infringed Arlington's patents.  The uncontroverted evidence shows that

Bridgeport took Arlington's patents seriously and, before marketing or selling the

allegedly infringing products, obtained competent opinions from well-qualified

counsel that the patents were invalid and would not be infringed by the sale of

Bridgeport's products.

Willfulness must be proven by clear and convincing evidence.  *SRI Int'l v.*

*Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997).  Arlington's

high burden of proof on this claim of willful infringement is important because "in

ruling on a motion for summary judgment, the judge must view the evidence

presented through the prism of the substantive evidentiary burden."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Bridgeport is entitled to summary

judgment because Arlington cannot produce facts sufficient to support a finding of

willful infringement by clear and convincing evidence.  Accordingly, summary

judgment must be entered in Bridgeport's favor on this claim.

30385212.1                                    4

A.   Willfulness Cannot Be Shown Where Bridgeport Relied Upon Competent Attorney Opinions.

Bridgeport sought and relied on competent attorney opinions, which prevents Arlington from meeting its burden to prove willful infringement. Willfulness may be shown only where, upon consideration of the totality of the circumstances, clear and convincing evidence establishes that the infringer acted in disregard of the patent and had no reasonable basis for believing it had a right to act as it did. *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994). After a party receives actual notice of another's rights to an issued patent, that party has an affirmative duty of due care. *Id.*; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992).

An important factor in evaluating compliance with this duty of care is whether an opinion of competent counsel was obtained. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). "The competency requirement applies to both the qualifications of the person giving the opinion and to the content of the opinion itself." *Jurgens v. CBK Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996).

1.   The Attorneys Were Highly Qualified To Provide The Opinions.

Bridgeport received opinions from two highly qualified patent attorneys. Each attorney has been practicing intellectual property law with a concentration on

patents for the entirety of their careers. Their combined experience advising clients on patent issues is in excess of 50 years.

Melvin Stoltz provided an opinion related to the '164 and '050 Patents on November 17, 1999. Factual Statement ¶7; Ex. R.[2] He has a B.S. in Chemical Engineering from the University of Connecticut and received a J.D. from the University of Connecticut School of Law in 1969. Factual Statement ¶8. He was admitted to the patent bar in 1970. *See* Factual Statement ¶8; Stoltz Depo. at 21.[3] For 30 years, he has provided opinion letters to clients and has concentrated on patent prosecution and counseling clients regarding intellectual property issues. Factual Statement ¶9.

Frank Linguiti also provided Bridgeport with opinions related to the '164 and '050 Patents. Factual Statement ¶12; Exs. N, O. The opinions were dated December 31, 1999, and January 24, 2000. *Id.* Mr. Linguiti holds a B.S. and Masters degree in Engineering from the University of Pennsylvania. Factual Statement ¶13. He received his J.D. in 1982 from DePaul University. *Id.* He has been a member of the patent bar for 20 years, and has concentrated in patents for his entire career. *Id.*

---

[2] All referenced exhibits are attached to the affidavit of Renee L. Jackson, dated December 30, 2002 ("Jackson Aff."), and were submitted in conjunction with the Factual Statement.

Arlington cannot seriously maintain that the attorneys were not qualified to provide the opinions. *E.g., Read Corp. v. Portec, Inc.*, 970 F.2d at 829 (qualified attorney "was a patent attorney with many years of experience"); *Ortho Pharm. Corp. v. Smith*, 959 F.2d at 944 ("opinion letters were obtained from experienced patent counsel"). Given the extensive education, expertise, and experience of Messrs. Stoltz and Linguiti, they were both more than qualified to provide the three opinions on which Bridgeport relied.

2.     The Opinions Were Competent.

The three attorney opinions it obtained gave Bridgeport a belief that a court "might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm. Corp. v. Smith*, 959 F.2d at 944. Arlington may attack details or portions of the opinions, but it cannot present genuine issues of material fact sufficient for a reasonable jury to conclude by clear and convincing evidence that the opinions were obviously incompetent and, taken together, could not reasonably have been relied upon.

The "most important consideration" in adjudging an opinion competent is that nothing in it would alert a client to reject it as "an obviously bad opinion." *Read Corp. v. Portec, Inc.*, 970 F.2d at 830. It is the reasonableness of the client's

---

[3] Relevant excerpts from the deposition transcript of Melvin I. Stoltz ("Stoltz Depo.") are attached as Exhibit M to the Jackson Aff.

reliance on the opinion that is the ultimate question. *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1559 (Fed. Cir. 1986). A client's reliance is reasonable so long as the opinion contains "sufficient internal indicia of credibility." *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983). The opinions from both Messrs. Stoltz and Linguiti clearly "evidence an adequate foundation." *See, e.g., Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 744 (Fed. Cir. 1993) (statement that the opinion is based on a review of the file history of the patent in question, the prior art of record, and additional prior art showed proper foundation). The discussions of prior art and detailed analyses show that their opinions are "not conclusory." *Id.* Accordingly, Bridgeport obtained and reasonably relied upon numerous competent opinions from highly competent patent counsel.

An opinion need not include an evaluation of every aspect of a particular invalidity or non-infringement position to be competent. *Westvaco Corp. v. International Paper Co.*, 991 F.2d at 744 (opinion letter competent although it lacked discussion of infringement under the doctrine of equivalents). An opinion that addresses the invalidity of a patent need not also address whether that patent is infringed. *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d at 793. In fact, the Federal Circuit has characterized arguments to the contrary as "specious." *See id.* An opinion must simply give the potential infringer a belief that a court "might

30385212.1

8

reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm. Corp. v. Smith*, 959 F.2d at 944. *See also Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d at 1559 (oral opinion providing ideas to avoid infringement was sufficient evidence of a lack of willfulness despite the fact that the attorney did not review the patent's prosecution history or any prior art). Thus, the fact that Messrs. Stoltz and Linguiti only concluded that the '050 Patent was invalid, and did not definitively address the question of infringement of that patent, does not reduce the reasonableness or reliability of those opinions.

"Whether or not an opinion was 'legally' correct is not the proper focus." *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed. Cir. 1995). An opinion is competent even if it turns out to be contrary to the result actually obtained in the case. *Id*; *Ortho Pharm. Corp. v. Smith*, 959 F.2d at 944 (in fact that is the usually the occasion on which the opinion is being considered). Instead, the competency of an opinion must be judged objectively. *Read Corp. v. Portec, Inc.*, 970 F.2d at 829. The objective competence of an opinion is shown by factors including its tone and apparent basis on adequate foundation. Basically, "coerced," "conclusory," "terse" or "off-the-cuff" opinions are disfavored. *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d at 793; *Read Corp. v. Portec, Inc.*, 970 F.2d at 830; *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d at 1559.

The opinion of Mr. Stoltz dated November 17, 1999, is objectively competent. It reflects a thorough review of the patents,[4] a detailed analysis of their file histories, a review of prior art references cited and relied upon by the patent examiner during the prosecution of the patents, uncited prior art, and a comparison of the scope of the patent rights with a pre-production sample and engineering drawing of Bridgeport's product which was provided. Factual Statement ¶10; Ex. R at 1, 5-6. Mr. Stoltz provided his opinion on validity and infringement after reviewing the relevant file history and prior art and undertaking his best analysis. Stoltz Depo. at 159-60, 255-56.

Mr. Stoltz separately considered each independent claim of the '164 Patent and compared the relevant limitations against the sample and drawing of Bridgeport's proposed product. In reviewing the patent history, he determined that the patent examiner initially rejected some proposed claims. In response to the office action rejecting certain claims, Arlington filed an amended claim 1 which incorporated a new limitation. Because Arlington used the new limitation to

---

[4] Mr. Stoltz also analyzed another Arlington Patent, U.S. Patent No. 5,373,106 ("the '106 Patent"). Ex. R at 1, 4-5. After reviewing that patent, analyzing its file history, and comparing its scope against Bridgeport's product, he concluded that Bridgeport's product did not infringe the '106 Patent. Id. at 5. Mr. Stoltz analyzed the '106 Patent in the same manner he analyzed the '164 and '050 Patents. Arlington must have agreed with his analysis of the '106 Patent because it has not asserted any claims under the '106 Patent against Bridgeport. Arlington's apparent contention that Mr. Stoltz's analysis of the '106 Patent was competent, but his analysis of the other patents was not, is unpersuasive.

convince the patent examiner that claim 1 distinguished the prior art, Mr. Stoltz

concluded that to infringe the patent, a product must contain the structure added in

amended claim 1. Claim 14, as amended, also includes the same limitation.

Bridgeport's sample product did not contain the relevant limitations of claims 1

and 14. Therefore, he concluded that the Bridgeport product could not infringe

claims 1 or 14. After undertaking a similar analysis, he also concluded that

Bridgeport's product did not incorporate the limitations of the only other

independent claim – claim 12. Accordingly, Mr. Stoltz unequivocally concluded

that the Bridgeport product could not infringe the '164 Patent. Factual Statement

¶10; Ex. R at 1-2; Stoltz Depo. at 238, 245, 254.

Mr. Stoltz also compared each independent claim of the '050 Patent with the

sample Bridgeport, and analyzed whether the product would infringe the patent.

He concluded that the construction Bridgeport proposed of its product was

"strikingly different" from the structure taught in the independent claims of the

'050 Patent. Factual Statement ¶11; Ex. R at 4-5. He also opined that the scope of

the protection defined in the independent claims could be argued to encompass the

structure incorporated in Bridgeport's product. *Id*. However, he further concluded

that "equally strong arguments can also be made that these claims are invalid for

failing to adequately define over the existing prior art." Factual Statement ¶11; Ex.

R at 4.

Mr. Stoltz also analyzed the validity of the '050 Patent.  Factual Statement ¶11; Ex. R at 5-6.  He focused on unreferenced prior art and took particular note of the patent examiners' reviews of prior art related to other patents, including U.S. Patent Nos. 5,342,994 and 5,189,258.  Factual Statement ¶10; Ex. R at 5-6.  During prosecution of the '994 Patent, the patent examiner cited and relied upon numerous prior art teachings of flexible, spring locking members mounted on an adapter that move inwardly to a retracted position for allowing the adapter to be inserted in a hole and then spring outward to lock the adapter in the hole and prevent its withdrawal from the hole.  Ex. R at 5; Stoltz Depo. at 270-71.  All of these patents are pertinent prior art references that the patent examiner should have considered during the prosecution of the '050 and '164 Patents.  Ex. R at 6; Stoltz Depo. at 272.  However, as Mr. Stoltz emphasized, the patent examiner failed to review or cite a single one of these pertinent prior art references.  Ex. R at 5-6; Stoltz Depo. at 271-72.  Accordingly, Mr. Stoltz concluded that during the prosecution of the '050 Patent, the patent examiner clearly failed to thoroughly review and cite the most pertinent prior art patents, thereby rendering the validity of the patent seriously doubtful.  Ex. R at 5-6; Stoltz Depo. at 239.  Mr. Stoltz advised Bridgeport of his opinion that there were serious questions regarding the validity of the '050 Patent, and that an invalid patent cannot be infringed.  Stoltz Depo. at 239, 245.

Not only is this November 17, 1999, opinion thorough, but its tone shows why Bridgeport reasonably relied on it. Mr. Stoltz clearly provided Bridgeport with his candid advice. His conclusion that there was a "serious question regarding the validity of the '050 Patent" is an example of the day-to-day advice he provided Bridgeport. "An opinion . . . need not unequivocally state that the client will not be held liable for infringement. An honest opinion is more likely to speak of probabilities that certainties." *Westvaco Corp. v. International Paper Co.*, 991 F.2d at 744. *See also Read Corp. v. Portec Inc.*, 970 F.2d at 829, n.9 (same). Likewise, Mr. Stoltz's comments about the differences between the Bridgeport product and the '050 Patent, while recognizing that arguments could be made regarding infringement, show that his opinion represented his honest judgment and that Bridgeport's reliance was reasonable. "A party is not guilty of ignoring patent rights because it resolves a close question of infringement in its favor." *Ortho Pharm. Corp. v. Smith*, 959 F.2d at 945.

Mr. Linguiti provided an initial opinion dated December 31, 1999. This opinion reflects study of the relevant patents,[5] their prosecution histories, all documents that were made of record and/or identified during the prosecution of the

---

[5] Mr. Linguiti also reviewed and analyzed the '106 Patent. Exs. N, O. Just as Mr. Stoltz had, Mr. Linguiti concluded that the '106 Patent was not infringed by Bridgeport's product and moreover, that it was invalid. Ex. N at 1; Ex. O at 6. Arlington has not taken issue with Mr. Linguiti's analysis or conclusion relating to the '106 Patent.

30385212.1

13

applications, drawings of the Bridgeport product at issue, a pre-production sample

of the Bridgeport product, and prior art patents Mr. Linguiti located in his own

search and believed to be relevant to the analysis. Ex. N at 2, 16. The opinion

discussed the relevant law and concluded that the '164 Patent clearly was not

infringed. *Id.* at 10. In reaching his conclusion, Mr. Linguiti reviewed in detail the

prosecution history of the '164 application, including the initial rejection of certain

claims and the resulting amendments that Arlington made. *Id.* at 7-8. He then

considered whether Bridgeport's product would infringe any claim of the '164

Patent, either literally or under the doctrine of equivalents. *Id.* at 10. Mr. Linguiti

compared the limitations of each of the independent claims of the '164 Patent

against Bridgeport's proposed product. *Id.* Given the structure of the Bridgeport

product, he concluded that that it did not infringe, either literally or under the

doctrine of equivalents, the '164 Patent. *Id.*

Mr. Linguiti's opinion also concluded that the '050 Patent was invalid. *Id.*

at 1, 16-24. Mr. Linguiti searched for and obtained numerous prior art references

that were not before the patent examiner during the prosecution of the '050 Patent.

*Id.* at 15-16. The opinion analyzed these prior art references and concluded that

they teach, either alone or in combination, all features upon which the patentability

of the independent claims of the '050 Patent was based. *Id.* at 16-21. In addition,

Mr. Linguiti concluded that the prior art he found also taught the features claimed

in the dependent claims of the '050 Patent. *Id.* at 22-23. Accordingly, Mr. Linguiti set forth many separate and specific reasons why the claims of the '050 Patent were invalid as anticipated by prior art, as well as why certain of the claims were invalid as obvious. *Id.* at 16-24.

Mr. Linguiti provided a second opinion, dated January 24, 2000, which concluded that the '164 Patent was invalid. Ex. O at 1. This opinion was based, *inter alia,* on his study of the prosecution history of the '164 Patent, the pre-production sample Bridgeport product and the engineering drawing he had been provided, and the numerous prior art references he found which had not been considered by the patent examiner during the prosecution of the '164 Patent. *Id.* at 2, 4, 7-8. Mr. Linguiti separately considered each of the independent claims of the '164 Patent, and concluded that numerous prior art references taught or suggested the features claimed. *Id.* at 4-5. Based on his analysis, there were no fewer that 11 specific prior art references, not considered by the patent examiner, which rendered all claims of the '164 Patent invalid. *Id.* at 4-6.

> 3.    Bridgeport Obtained Three Opinions From Two Separate Patent Counsel *Prior* To Marketing Or Selling Any Of Its Allegedly Infringing Devices.

When a potential infringer has actual notice of another's patent rights, it has an affirmative duty to exercise due care to determine whether or not it is infringing. *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d at 1389. "Such an

affirmative duty includes, *inter alia,* the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity." *Id.* at 1390 (emphasis in original).

In this case, Bridgeport obtained an opinion from Mr. Stoltz in November 1999 which concluded that the sale of Bridgeport's product would not infringe the '164 Patent and that there were serious questions regarding the validity of the '050 Patent. Factual Statement ¶¶10, 11; Ex. R. Moreover, Bridgeport also obtained two opinions from separate patent counsel, Mr. Linguiti, in December 1999 and January 2000. Factual Statement ¶12; Exs. N, O. These opinions were also favorable to Bridgeport and concluded that the sale of its product would not infringe the '164 Patent and that the '164 and '050 Patents were invalid. Factual Statement ¶¶15, 16. Bridgeport did not offer any snap-in connectors for sale until approximately February 2000, after it received three separate opinions from patent counsel. Factual Statement ¶5. Accordingly, out of an abundance of caution Bridgeport obtained more than ample competent legal advice *before* it engaged in any activity which even arguably infringed the '164 or '050 Patents. This significant undertaking establishes that Bridgeport met its duty of care, and as a matter of law did not willfully infringe either the '164 or '050 Patent.

B.   Bridgeport Reasonably Relied On These Opinions.

Bridgeport reasonably relied on the opinions and had a reasonable belief that it had a right to sell its snap-in connectors. Nothing in the opinions it received alerted Bridgeport that they were "obviously bad" and should not be relied upon. *See Read Corp. v. Portec Inc.*, 970 F.2d at 830. Moreover, to rely on the attorney opinions, a client need not necessarily understand them or be able to "itself evaluate the legal competence of its attorney's advice." *Id.* at 829. "The client would not need the attorney's advice at all in that event." *Id.* Rather, the defendant's "intent and reasonable beliefs are the primary focus of a willful infringement inquiry." *Ortho Pharm, Corp. v. Smith*, 959 F.2d at 944.

Bridgeport initially received an opinion from its trusted advisor, Mr. Stoltz. Factual Statement ¶7; Ex. R. While that opinion was sufficient for Bridgeport to proceed, it did not rely solely on this opinion but proceeded in an even more responsible and cautious manner. Out of an abundance of caution, Bridgeport sought and obtained a second opinion from another highly experienced patent counsel, Mr. Linguiti, "as a safeguard" to ensure that it was proceeding in a way that respected others' rights. Kiely Depo. at 140.[6] Bridgeport obtained these opinions in accordance with its intent to "respect the rights, the intellectual

---

[6] Relevant excerpts from the deposition transcript of Kenneth M. Kiely ("Kiely Depo.") are attached as Exhibit K to the Jackson Aff.

property rights of others." Factual Statement ¶ 6; Kiely Aff. ¶15;[7] Kiely Depo. at 33.

Messrs. Stoltz and Linguiti advised Bridgeport that after due analysis, the '050 Patent was invalid; the '164 Patent was invalid; and the '164 Patent was not infringed either literally or under the doctrine of equivalents. Factual Statement ¶¶11, 15, 16; Exs. R, N, O. Bridgeport understood that if the '050 Patent was invalid, it could not be infringed. Kiely Depo. at 140. Based upon the legal opinions of invalidity and non-infringement, Bridgeport had no basis to believe that anyone would make a claim of patent infringement against it, and proceeded accordingly. Factual Statement ¶17; Kiely Aff. ¶¶14, 15; Kiely Depo. at 33.

The opinions have no indicia of being "obviously bad," but rather are thorough and detailed and objectively appear competent. *See* Exs. R, N, O. Bridgeport regarded the opinions as thorough and relied on the attorneys' expertise. Factual Statement ¶17; Kiely Aff. ¶15. Bridgeport's conduct in getting the opinions shows that its intent was to respect Arlington's patent rights. Moreover, Bridgeport reliance on the numerous opinions it obtained was reasonable.

---

[7] The Affidavit of Kenneth Kiely, dated December 30, 2002 ("Kiely Aff.") was submitted in conjunction with the Factual Statement.

C.   Kiely's Notes Are Irrelevant To The Allegation Of Willful
     Infringement.

During 1992, Bridgeport's engineer, Mr. Kiely, considered designing a snap-

in connector, but did not arrive at any particular or final design, and did not bring

any such product to market during that time.  Factual Statement ¶3; Kiely Aff. ¶12.

In 1992, however, Mr. Kiely made some handwritten notes regarding his

consideration of designing a snap-in connector.  He spoke with Mr. Stoltz about

duplicating Arlington's ring concept with some design changes, and made notes

that Mr. Stoltz "wasn't enthusiastic about us copying the Arlington concept since

he [Stoltz] guesses that Arlington probably applied for both utility and design

protection."  Kiely Depo. at 65.  Although Bridgeport never did anything based on

Mr. Kiely's 1992 notes and never brought a product to market based on those

notes, Arlington undoubtedly will argue that Mr. Kiely's notes are relevant to its

allegation of willful infringement of the later issued '164 and '050 Patents.

Arlington's argument is without merit.

First, neither the '050 Patent nor the '164 Patent had issued in 1992 when

Mr. Kiely made his handwritten notes.  Factual Statement ¶4; Exs. A, B.

Therefore, Arlington had no right to preclude anyone, including Bridgeport, from

making or selling a product which would later be covered by the patents.  To find

willful infringement, the infringer must be found to have "acted in disregard *of the*

*patent.*" *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1237 (Fed. Cir.

30385212.1                               19

1985) (emphasis in original). "To willfully infringe *a patent*, the patent must exist and one must have knowledge of it." *Id.* at 1236 (emphasis in original). Accordingly, one cannot infringe, let alone willfully infringe, patent rights that do not exist. *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d at 1056; *Read Corp. v. Portec, Inc.*, 970 F.2d at 828.

Moreover, a patent has no retroactive effect. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d at 1237. As a matter of law, even marking a product with "patent pending" provides no notice of any patent rights because the mere fact that a patent application has been filed does not result in any patent rights. *Id.* at 1236. Activity occurring before the issuance of the patent is not relevant to a determination of willfulness. *See id.* at 1237.

In 1992, Bridgeport could have made a snap-in connector, even one copied directly from Arlington's product, without infringing the later issued '050 or '164 Patents because those patents did not exist at the time. Even if Bridgeport had proceeded in accordance with Mr. Kiely's notes, such action would not have infringed any patent. Accordingly, Mr. Kiely's notes are wholly irrelevant to the issue of willful infringement of the '050 and '164 Patents.

Second, Mr. Kiely's statements do not indicate that he considered merely duplicating, or slavishly copying, Arlington's product, but rather that he considered making design changes and designing around any patent rights that Arlington

might acquire. Mr. Kiely testified, consistent with his handwritten notes, that he considered basing a product design on Arlington's product, *but only with design changes.* Kiely Depo. at 70. As has been long-established by the Federal Circuit, conduct "involving keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d at 1235-36. "One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace." *Id.* at 1236. Where there is an attempt, even an unsuccessful attempt, to design around a patented product, willful infringement should not be found. *Westvaco Corp. v. International Paper Co.*, 991 F.3d at 745. Mr. Kiely's handwritten notes show that in 1992, Bridgeport was merely interested in making a product "with design changes" which is a legitimate competitive goal. Accordingly, Mr. Kiely's notes from 1992 are irrelevant to Arlington's allegation of willful infringement because even if Arlington had relevant patent rights in 1992, which it did not, Bridgeport would not have willfully infringed any patents if it made a good faith effort to design around Arlington's product.

Third, Bridgeport never acted upon Mr. Kiely's notes from 1992, and did not bring any snap-in connector to market until nearly a decade later, in 2000. Factual

Statement ¶¶3, 5; Kiely Aff. ¶¶12, 13; Kiely Depo. at 70. Bridgeport has never

made a duplicate of Arlington's product. Kiely Depo. at 71. Mr. Kiely's notes

indicated that Mr. Stoltz was not "enthusiastic about [Bridgeport] copying the

Arlington concept" and Bridgeport did not copy the Arlington concept. *See* Kiely

Depo. at 66. Instead, Bridgeport began designing a snap-in connector in 1998 and

finalized a prototype in 1999. Factual Statement ¶¶5, 6; Kiely Aff. ¶¶13, 14.

Then, before manufacturing and selling its snap-in connector in 2000, Bridgeport

obtained opinions from Messrs. Stoltz and Linguiti. Factual Statement ¶¶5-7, 12;

Kiely Aff. ¶¶13-15. Accordingly, whatever Bridgeport considered in 1992, before

Arlington's '050 and '164 Patents issued, has no relevance to its reasonable basis

for deciding to go forward with designing and marketing its products in 2000.

Finally, the fact that Bridgeport went to its attorney for advice even while it

was unaware of any Arlington patent shows its clear respect for other's intellectual

property rights. To the extent the advice it was given in 1992 suggested that it

proceed carefully, Bridgeport did so. *See* Kiely Depo. at 65-66.

Clearly, the "nature, timing, and number of the contacts" between

Bridgeport and its counsel shows that Bridgeport was concerned with respecting

Arlington's patent rights. *See Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d at 794. It

sought and obtained opinions from not only one, but two, highly experienced

patent counsel, Messrs. Stoltz and Linguiti. Moreover, Mr. Linguiti provided not

30385212.1                              22

just one, but two, separate opinions. These opinions contain sufficient internal indicia of credibility to remove any doubt that Bridgeport in fact received competent opinions. These opinions clearly provide a reasonable basis for concluding that Arlington's '050 and '164 Patents were invalid and, moreover, even if valid would not be infringed by Bridgeport's proposed snap-in products. Bridgeport obtained these opinions prior to selling its products. In deciding to market and sell its snap-in products, it reasonably relied on these opinions. Therefore, "[n]o reasonable juror could find the asserted proof of willfulness [could rise] to the quantum of clear and convincing evidence." *Read Corp. v. Portec*, 970 F.2d at 829. Bridgeport is entitled to summary judgment dismissing Arlington's claim of willfulness.

II.   ARLINGTON MAY NOT RECOVER DAMAGES RELATED TO EITHER THE '050 OR '164 PATENTS FOR SALES MADE PRIOR TO JANUARY 3, 2001.

A patentee is entitled to damages from when it began marking its product or from when it actually notified the accused infringer of infringement, whichever is earlier. 35 U.S.C. § 287(a). The patentee has the burden of pleading and proving at trial that it complied with these statutory requirements. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997). The notice required is "specific and actual notice to the accused infringer charging infringement of the patent in question." *Amsted Indus., Inc. v. Buckeye Steel*

*Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Evidence of actual knowledge of the patent by the accused infringer is irrelevant. *Id.  Accord Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001) (notice is an affirmative action of the patentee; knowledge of the accused infringer is immaterial).

Arlington has not produced any evidence that it marked any products with either the '050 or the '164 Patent numbers. Accordingly, it cannot recover damages until after it actually notified Bridgeport of the alleged infringement of those patents. The earliest possible date from which damages could lawfully begin is January 3, 2001, the date that Arlington sent a letter to Bridgeport notifying it of the alleged infringement of the '050 and '164 Patents. Factual Statement ¶19; Ex. S; Kiely Aff. ¶16. Arlington agrees that January 3, 2001 is the earliest that Arlington gave notice to Bridgeport of its alleged patent infringement. *See* Jackson Aff., Ex. D (Answer to Interrog. No. 1). Accordingly, even if Arlington establishes infringement of its patents, which it cannot do, as a matter of law it cannot recover any damages from Bridgeport for sales made prior to January 3, 2001. This Court must order that the relevant period for potential damages for the both the '050 and '164 Patents begins on January 3, 2001.

30385212.1

24

## CONCLUSION

For the foregoing reasons, Bridgeport requests that its motion for summary judgment be granted and that Arlington's willful infringement claims be dismissed as a matter of law. Bridgeport also requests that its motion that Arlington is entitled to damages, if any, arising only after January 3, 2001, be granted.

January _15_, 2003.   _Robert N. Gawlas, Jr._

Alan M. Anderson
Renee L. Jackson
Sharna A. Wahlgren
FULBRIGHT & JAWORSKI L.L.P.
225 South Sixth Street, Suite 4850
Minneapolis, MN 55402-4320
Telephone: (612) 321-2800
Facsimile: (612) 321-9600

Mark E. Ungerman
FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, N.W.
Washington, D.C. 2004-2615
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

Robert N. Gawlas, Jr.
ROSENN, JENKINS & GREENWALD, L.L.P.
15 South Franklin Street
Wilkes-Barre, Pennsylvania 18711-0075

Attorneys for Defendant Bridgeport Fittings, Inc.

30385212.1

25