# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ARLINGTON INDUSTRIES, INC.,　)
　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　)　　Civil Action No. 3:01-CV-0485
　　　　　　　　　　　　　　　)　　(CONSOLIDATED)
v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)　　(Judge Christopher C. Conner)
BRIDGEPORT FITTINGS, INC.,　)
　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　)
----------------------------------------------------------------------------------------
BRIDGEPORT FITTINGS, INC.,　)
　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
ARLINGTON INDUSTRIES, INC.,　)
　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　)

## ARLINGTON INDUSTRIES, INC.'S OPPOSITION TO BRIDGEPORT FITTINGS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF CLAIM 8 OF U.S. PATENT 5,266,050

# **TABLE OF CONTENTS**

I.    INTRODUCTION..........................................................................................1

II.   BACKGROUND...........................................................................................2

III.  ARGUMENT ...............................................................................................4

      A.    Standard of Review..........................................................................4

      B.    Bridgeport Literally Infringes Claim 8, as the Accused Products
            Contain Outwardly Sprung Members.................................................6

      C.    Bridgeport Infringes Claim 8 Under The Doctrine Of
            Equivalents.....................................................................................18

            1.    Prosecution History Estoppel Is Inapplicable ..........................18

                  a.    The Law of Prosecution History Estoppel......................19

                  b.    The Presumption of Surrender Does Not Apply............20

                  c.    If the Presumption Does Apply, Arlington Is
                        Entitled to Overcome The Rejection.............................22

            2.    Bridgeport is Not Entitled to Summary Judgment on the
                  Doctrine of Equivalents.........................................................24

                  a.    The Grounding Tangs On The Accused Products
                        Are Equivalent to the Outwardly Sprung Claim
                        Limitation.................................................................25

IV.   CONCLUSION ..........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 287 F. Supp.2d 126 (D. Mass. 2003) .............23, 24

*AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808 (M.D. Pa. 1994) ...........................4

*AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir. 2007) ...........................25

*Arlington Indus., Inc. v. Bridgeport Fittings*, 290 F. Supp. 2d 508 (M.D. Pa. 2003)........12, 14, 18

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655 (M.D. Pa. 2005) ...................................................................................................................................5

*Catalina Marketing Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)...............18, 25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................4

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005) ...................................................................................................................................4

*Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998)..........................................18, 25

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314 (Fed. Cir. 2003) ...................................................................................................................20

*Fakete v. Atena, Inc.*, 308 F.3d 335 (3d Cir. 2002) ....................................................................4

*Federal Labs. v. Barringer Research, Ltd.*, 696 F.2d 271 (3d Cir. 1982) ......................................4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) .....23, 24

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950).....................................25

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co., Inc.*, 114 F.3d 1161 (Fed. Cir. 1997).............5

*Honeywell Int'l Inc. v. Hamilton Sundstrand, Corp.*, 370 F.3d 1131 (Fed. Cir. 2004).....19, 20, 22

*Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.*, 2008 U.S. App. LEXIS 8405 (Fed. Cir. Apr. 18, 2008)................................................................................................ passim

*Ranbaxy Pharms., Inc. v. Apotex, Inc.*, 350 F.3d 1235 (Fed. Cir. 2003) ....................................20

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997).....................................25

*Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377 (Fed. Cir. 2000).........................5

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ..........................5, 18

## I.   INTRODUCTION

Plaintiff Arlington Industries Inc. ("Arlington") respectfully submits this memorandum in opposition to Bridgeport Fittings, Inc.'s ("Bridgeport") Motion for Summary Judgment of Non-Infringement ("Motion"), of claim 8 of Arlington's U.S. Patent No. 5,266,050 (the "'050 patent") (the "Asserted Claim"). The Motion should be denied as this Court's claim construction of February 28, 2008, does not entitle Bridgeport to summary judgment of non-infringement. On the contrary, Arlington has produced incontrovertible evidence that the accused products meet each element of the Asserted Claim both literally and under the doctrine of equivalents.[1]

Notwithstanding Bridgeport's spurious arguments, Arlington is entitled to show infringement both literally and under the doctrine of equivalents for the "outwardly sprung members" limitation. Since the four tensioning members or "grounding tangs" in Bridgeport's adaptors cause it to perform substantially the same function in substantially the same way with substantially the same result as the outwardly sprung members of the asserted claim, they meet that limitation under the doctrine of equivalents. In addition, the evidence clearly demonstrates that Bridgeport's grounding tangs literally bend outwardly and remain permanently

---

[1] *See* Arlington's Statement of Material Facts Showing Genuine Issues To be Tried in Opposition to Bridgeport's Motions for Summary Judgment at Nos. 40-61 ("SOMF").

bent towards the outside of the adaptor the entire time the adaptor is a part of an accused product.

This Court must deny Bridgeport's motion for summary judgment of non-infringement because the material facts demonstrate that the Accused Products infringe the asserted claim.

## II.   BACKGROUND

For nearly eight years, Arlington and Bridgeport have been involved in litigation concerning the '050 patent.   Prior to this case, Arlington initiated a separate action against Bridgeport before this Court, alleging that certain Bridgeport connectors, called "Snap-In" connectors, infringed two of Arlington's patents:  the '050 patent, and U.S. Patent No. 5,171,164 ("'164 Patent").   The prior litigation resulted in permanent injunctions entered against Bridgeport and its forced admission that 24 of its "Snap-In" connectors infringe, *inter alia,* claim 8 of the '050 patent.   *See* Exh. M, Kiely Tr., 11/13/07, at 14-18; Exh. E, Auray Tr., 11/14/07, at 14-22; Dkt. No. 270, Confession of Judgment and Injunction, 6/30/06; Dkt. No. 270, Permanent Injunction, 7/24/02.[2]

Bridgeport, undeterred, made superficial alterations to its products and continued its infringement with the so-called "Whipper-Snap" connectors (the

---

[2] Unless otherwise noted, all cited Exhibits are attached to the Declaration of Shailendra Maheshwari in Support of Arlington Industries, Inc.'s Opposition Brief to Bridgeport Fittings, Inc.'s Motions for Summary Judgment.

"Accused Products"). Arlington sought to discuss this new line of connectors with Bridgeport in late 2005, immediately after which Bridgeport sued Arlington, *inter alia*, for a declaratory judgment of non-infringement of the '050 patent. Thereafter, Arlington responded and this action commenced. Discovery has closed, and a *Markman* order based on an evidentiary hearing has issued. *See* Dkt. No. 376. Bridgeport filed the instant motion (along with several other summary judgment motions) on May 1, 2008. *See* Dkt. No. 390. Bridgeport claims that the Accused Products do not literally infringe the Asserted Claim because they lack "outwardly sprung members."

Bridgeport, by misapplying and misinterpreting a recent Federal Circuit decision, seeks to prevent Arlington from relying upon the doctrine of equivalents to show infringement. *Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.*, 2008 U.S. App. LEXIS 8405 (Fed. Cir. Apr. 18, 2008). That case, however, does not change the fact that there is no prosecution history estoppel to apply to the equivalents in this case. At no time in the prosecution history did Arlington surrender any subject matter covering Bridgeport's outwardly sprung members.

The undisputed facts demonstrate that not only should Bridgeport's Motion be denied, but this Court should enter summary judgment of infringement in favor of Arlington.

## III.   ARGUMENT

### A.   Standard of Review

Summary Judgment should not be granted unless there is a clear showing that no genuine issue as to any material fact remains for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Federal Labs. v. Barringer Research, Ltd.,* 696 F.2d 271, 275 (3d Cir. 1982) (reversing summary judgment of invalidity because an expert affidavit raised a genuine issue of material fact).   A factual dispute is material if it "bear[s] on an essential element of the plaintiff's claim." *Fakete v. Atena, Inc.,* 308 F.3d 335, 337 (3d Cir. 2002) (citations omitted).

Whether the accused product infringes the properly construed claims is a question of fact for a jury. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1302 (Fed. Cir. 2005). "At the summary judgment stage, . . . the Federal Circuit has repeatedly cautioned district courts to approach with care the issue of infringement." *AMP, Inc. v. Fujitsu Microelectronics, Inc.,* 853 F. Supp. 808, 823 (M.D. Pa. 1994).   Summary judgment of non-infringement must be "approached with particular care," as "questions of infringement invariably involve determinations of fact." *Id.* at 822-23.

If an accused product does not literally infringe a patent claim, the inquiry does not end there.   The accused product may be found to infringe under the doctrine of equivalents if there are no substantial differences between the two.

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997). Although Bridgeport attempts to prevent Arlington from asserting the doctrine of equivalents, this argument fails because Arlington has never made any amendments during the prosecution history of the '050 history that surrendered any coverage of Bridgeport's outwardly sprung members. Whether the accused products contain "equivalents" of the elements of the properly construed claims under the doctrine of equivalents "requires an intensely factual inquiry." *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000); *see Hilton Davis Chem. Co. v. Warner-Jenkinson Co., Inc.*, 114 F.3d 1161, 1163 (Fed. Cir. 1997) (*en banc*).

Application of this standard to Bridgeport's motion plainly reveals that summary judgment is not appropriate in this case. Put simply, Arlington has "produce[d] affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim." *Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 659 (M.D. Pa. 2005). Such "evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (citation omitted) (Summary judgment denied when fact issues existed as to whether parties' designs were substantially similar and competitor had access to owner's copyrighted design).

Here, the material facts, including admissions regarding infringement by Bridgeport's own personnel, its expert witness and its patent attorney, mandate denial of Bridgeport's Motion for summary judgment.

### B.   Bridgeport Literally Infringes Claim 8, as the Accused Products Contain Outwardly Sprung Members

A review of claim 8 of the '050 patent, coupled with this Court's construction of the disputed claim terms, mandates a finding, as a matter of law, that the Accused Products literally infringe claim 8 of the '050 patent.  claim 8 reads as follows:

> 8. A quick connect fitting for an electrical junction box comprising:
>
> a hollow electrical connector through which an electrical conductor may be inserted having a leading end thereof for insertion in a hole in an electrical junction box;
>
> a circular spring metal adaptor surrounding said leading end of said electrical connector which has a leading end, a trailing end, and an intermediate body;
>
> at least two **outwardly sprung members** carried by said metal adaptor near said trailing end of said adaptor which engage the side walls of the hole in the junction box into which said adaptor is inserted;
>
> at least two spring locking members carried by said metal adaptor that spring inward to a retracted position to permit said adaptor and locking members to be inserted in a hole in an electrical junction box and spring outward to lock said electrical connector from being withdrawn through the hole; and
>
> an arrangement on said connector for limiting the distance said connector can be inserted into the hole in the junction box.

*See* Exh. G, '050 patent, at col. 10, ll. 28-53 (emphasis added).   Only the highlighted term was focused on by Bridgeport in its motion for summary judgment. *See* Dkt. No. 390.

This Court construed the limitation "outwardly sprung members" to mean "members bent outward at an angle relative to the normal plane of the adaptor." Dkt. No. 376, at 18.  The Parties do not dispute that the Accused Products are the fully assembled connectors with the adaptors placed on the connector body. *See* SOMF No. 40, 43, 45(b) and 4(c); Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶¶ 14-21; Exh. G, '050 Patent, at Claim 8; Exh. Q, Williamson Tr., 9/7/07, at 92:2-15. Thus, the Accused Products literally meet the "outwardly sprung members" limitation of claim 8 because the tensioning tangs are bent outward an angle relative to the plane of the adaptor.  The tensioning tangs on the Accused Products are intentionally bent outward by a specially engineered ramp located on the connector. *See* SOMF No. 45(f).  Admissions made by Bridgeport's witnesses and its expert establish the existence of this ramp on the connector and that it bends and maintains the tensioning tangs outward from the body of the adaptor.   *See* SOMF No. 45(f); Exh. M, Kiely Tr., 11/13/07, at Exh. 12, at FIGS 20, 21.

A quick review of the Accused Products makes clear that the grounding tangs are bent outward when assembled on the connector body. *See* SOMF No. 45; Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶¶ 14-21.  The illustrations below

show the adaptor (left) and connector body (right) of the Accused Products, demonstrating that the leading end of the connector body has raised areas which bend the tensioning tangs outward from the plane of the adaptor when fully assembled:



See SOMF No. 45; Exh. C, Gretz Decl., 5/1/07, at ¶¶ 8-9; *see also* Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶¶ 14-21.   Further, the following pictures demonstrate the "outward" character of the tensioning tangs of the Accused Products:



**Body of adapter and grounding tangs do not have same diameter when assembled**



**Outwardly Sprung Members bent outwards from "plane Of the adapter"**

**Plane of adapter seats in recessed area of outbound end of connector body**

*See* SOMF No. 45(e); Exh. C, Gretz Decl., 5/1/07, at ¶ 9; *see also* Exh. D, Kiely Tr., 11/8/06, at 120-122.

Bridgeport specifically designed the Accused Products to have the tensioning tangs bent outward from the body of the adaptor when assembled.  Mr. Kiely of Bridgeport testified that this design was intended to increase grounding and continuity.  *See* SOMF No. 45(f).  Mr. Kiely admitted that the connector of Bridgeport's Accused Products was specially designed to have a raised area, identified in Bridgeport's drawings as element "S" on the connector, that

intentionally bends the tensioning tangs on the adaptor outwards relative to the

body of the adaptor, to create better tension with the knockout hole in the junction

box.  He testified as follows:

```
12   Q   Now, you have -- in addition to the raised
13       window areas on your external locking rings, you
14       have adjacent, then, longer tensioning tangs.
15       We've already discussed that.
16       Correct?
17   A   No.  Tangs are same length.
18   Q   Now, they ride upon that raised area
19       "S," don't they?
20   A   Yes.
21       That's what I was trying to say.
22   Q   Yeah.  And -- and it's they that are being
23       held under tension more by that raised area "S."
24       Am I right?
25   A   That's the intent.  Yes. When compressed into an outlet
box.
. . .
17   Q   Okay.  Well, just for the record, what
18       part of the adapter is the raised area "S" intended
19       to affect?
20   A   The four little tabs, two on each
21       side.
22   Q   The tensioning tangs?
23   A   If that's what they're called in the
24       patent.  Yes.
25   Q   All right.
                              89
1        When you say "cantilevered," do you mean
2        bended out?
3    A   Bending, yes.
```

*See* SOMF No. 45(f); Exh. M, Kiely Tr., 11/13/2007, at 87:12-25, 88:17-89:3

(emphasis added), and Errata Sheet Correcting Deposition Testimony; *see also*

SOMF No. 45(a).  The raised area "S" is shown near item 61A in Figure 21 of Bridgeport's own patent, U.S. Patent No. 7,075,007 ("'007 patent"), shown below with the contact points highlighted in blue:



*See* SOMF No. 45(f)*;* Exh. M, Kiely Tr., 11/13/07, at Exh. 12, '007 Patent, at FIG. 21.

Further, Arlington has provided empirical data, which confirms that the Accused Products' tensioning tangs are bent outward from the plane of the adaptor. Both Arlington's expert, Dr. Christopher Rahn, and one of the inventors of the '050 patent, Daniel O'Neil, individually measured the tensioning tangs relative to

the plane of the adaptor on the Accused Products. Their results demonstrate that the tensioning tangs are bent outward at an angle relative to the adjacent plane of the adaptor.[3]

Dr. Rahn independently measured 60 of the Accused Products labeled 38ASP, "using a slide caliper with a resolution of 0.001 inches that was calibrated using a .800 inch gage block." *See* SOMF No. 45(g); Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶¶ 15-16. For each of the 60 Accused Products labeled 38ASP, Dr. Rahn measured (A) the diameter across the first pair of tangs; (B) the diameter across the second pair of tangs; and (C) the diameter across the body of the adaptor. *Id*. at ¶ 15. Dr. Rahn's measurements showed that out of 120 pairs of tensioning tangs measured, 119 had diameters greater than the trailing ends of their respective adaptor bodies. *Id*. at ¶ 16. Dr. Rahn concluded that the tensioning tangs are "bent outwards when formed from the initially flat metal blank and also when they are assembled on the leading end of the connector." *See* SOMF No. 45(i); Exh. O, Rahn Trial Expert Report, 6/1/2007, at ¶ 14. *See Arlington Indus., Inc. v. Bridgeport Fittings*, 290 F. Supp. 2d 508, 527 (M.D. Pa. 2003) (denying summary judgment because evidence in the form of expert reports and deposition

_____

[3]Dr. Williamson does not contest the accuracy of the measurements made by Dr. Rahn and Mr. O'Neil. *See* Exh. Q, Williamson Tr., 9/7/07, at 77:20-78:8. Further, Mr. Kiely has never conducted tests on fully assembled connectors to verify whether the grounding tangs were actually in the same plane as the retaining arms or towards the outside. *See* Exh. L, Kiely Tr., 4/20/07, at 406:8-16.

testimony demonstrated that Bridgeport's manufacturing processes produced units which met the disputed limitation).

In its motion, Bridgeport attempts to minimize Dr. Rahn's measurements by stating that they are "within the tolerance of the unmounted tangs" specified by Bridgeport's engineering drawings for the adaptor. Bridgeport Br. at p.10. This argument is specious as the tolerances specified in Bridgeport's engineering drawings do not provide Bridgeport with a *defense* to infringement. In fact, Bridgeport's own dimensions show that the Accused Products meet this limitation; Bridgeport's tensioning tangs may be bent outward from the plane of the adaptor upon formation at a diameter of .005 inches greater than the plane of the adaptor and still be within tolerance. Mr. Kiely testified to this effect, as follows:

| 13 | Q | Let me ask you this:  The stated dimension |
| | | that -- that the -- both the arms that go around the |
| | | lug as well as the tensioning tangs was supposed to |
| | | be .906. |
| | | Correct? |
| 18 | A | That's correct. |
| 19 | Q | And then, with the plus or minus of the |
| 20 | | dimension, both the arms or the tensioning tangs |
| 21 | | could be .911. |
| 22 | | Correct? |
| 23 | A | Yes. |
| 24 | Q | Okay.  Now -- okay. |
| 25 | | … |

195

| 1 | | … |
| 4 | | Based on the tolerances, isn't it possible |
| 5 | | that the measurement that you have as .906 for the |
| 6 | | arms of the -- that go around the lug could be |

| 7 | | .906, but the measurement of the grounding tangs could be .911 and still be within tolerance? |
| 9 | | MR. ANDERSON:  Object to the form of |
| 10 | | the question. |
| 11 | A | Yes. |

*See* Exh. D, Kiely Tr., 11/8/06, at 194:13-195:11.

Consequently, Bridgeport cannot avoid infringement by the self-serving claim that its engineering drawings *permitted* the grounding tangs to be bent outward at an angle (.005 inches) relative to the plane of the adaptor. This Court previously denied Bridgeport's attempt to rely upon its engineering drawings as a defense, despite actual measurements of the Accused Products. *See Arlington*, 290 F. Supp. 2d at 527 (denying summary judgment despite engineering drawings showing intended dimensions that were).   This Court should similarly deny Bridgeport's Motion in this case.

Mr. O'Neil also independently measured 81 Accused Products, comprised of 65 38ASP connectors and 16 3838ASP connectors, using a digital caliper. *See* SOMF No. 45(l); Exh. N, O'Neil Tr., 4/24/07, at 90:3-9.  He performed the same series of measurements as Dr. Rahn on the 65 Accused Products labeled 38ASP, and his measurements showed that all 130 pairs of tensioning tangs had greater diameters than the trailing ends of their respective adaptor bodies. *See* SOMF No. 45(m); Exh. N, at 7.  Mr. O'Neil also measured 16 Accused Products labeled 3838ASP in the same manner.  *Id.*   All 32 pairs of tensioning tangs of these

Accused Products had greater diameters than the trailing ends of their respective adaptor bodies. *Id*. Mr. O'Neil's measurements established, just as Dr. Rahn's did, that the tensioning tangs are "bent outward at an angle relative to the normal plane of the adaptor." *See* Exh. N, O'Neil Tr., 4/24/07, at 81-82 and O'Neil Exh. 7; Dkt. No. 376, at 18.

Bridgeport should not be heard to dispute that the connectors on the Accused Products have a raised ramp (element "S" on FIGURE 21 of the '007 patent) which permanently bends the tensioning tangs (outwardly sprung members) outward relative to the normal plane of the adaptor. Bridgeport's own Engineering Manager, Mr. Kiely, testified that he ***intends*** the ramp to cause this bending to create more tension with the knockout hole upon insertion into the junction box. *See* SOMF Nos. 45(d) - 45(f).

Bridgeport also cannot dispute that claim 8 refers to a fully assembled connector. *See* SOMF Nos. 40, 43, 45(b) and 45(c). Thus, Bridgeport's contention that the dimensions of the tensioning tangs are the same as the rest of the adaptor at their initial formation is wholly irrelevant. Upon assembly of the adaptor onto the connector, Bridgeport intends the "S" ramp on the connector to bend the tensioning tangs outward to create better tension and grounding with the junction box. *See* SOMF Nos. 45(d)-45(f). Dr. Rahn and Mr. O'Neil's measurements further

confirmed that the tensioning tangs are bent outward relative to the body of the adaptor.  *See* SOMF Nos.45(g)-45(o).

Bridgeport erroneously asserts that the testing done by Arlington's experts does not show that the tensioning tangs are *permanently* bent outward.  To support this contention, Bridgeport makes much of the fact that Arlington has no evidence that the tensioning tangs on Bridgeport's adaptors are bent outward before being placed upon the connector or after the adaptor is removed from the connector body.  Because Bridgeport cannot dispute that the Accused Products' grounding tangs are bent outward when assembled, it tries to rely on measurements of adaptors which are not accused of infringement.

However, an adaptor that is not assembled on the connector body *is not accused* of infringing claim 8.  The only relevant measurements of the tensioning tangs are those taken when the adaptors are fully assembled on the connector body since this is the only Accused Product.  *See* SOMF Nos. 40, 43, 45(b) and 45(c).  Arlington's evidence, as laid out above, shows that when the Bridgeport adaptor is assembled on the connector (i.e. an Accused Product), the tensioning tangs on Bridgeport's adaptors are bent outward at an angle relative to the normal plane of the adaptor.  Thus, Bridgeport's tensioning tangs remain permanently sprung outward for the purposes of claim 8.

Bridgeport tries to dispute Arlington's proof of infringement by relying upon measurements taken by its expert, Dr. Williamson. Bridgeport asserts that Dr. Williamson measured the adaptors both before assembly and then after assembly to prove that the grounding tangs were not "permanently bent" outward. Bridgeport Br. at 12. But, Dr. Williamson *never* took measurements on an Accused Product. Instead, he measured the grounding tangs on adaptors before they were assembled to a connector. He then placed the adaptors onto the connectors, but *did not take any measurement of the Accused Products.* He then "removed the adaptors by *slicing away the retaining strap of one of the anchoring tabs with a high-speed grinding disc*, see figure 8". Borst Aff. Ex. A at ¶41 (Dkt. No. 394). (emphasis added). Thus, Dr. Williamson's measurements of unassembled adaptors, that were destroyed by Dr. Williamson's *slicing away* one of the anchoring tabs, are irrelevant to any analysis of infringement.

Accordingly, Bridgeport's admissions coupled with Arlington's measurements demonstrate that the raised "S" ramp on the connectors of the Accused Products bend the tensioning tangs outward at an angle relative to the plane of the adaptor. Under this Court's construction of "outwardly sprung members," there is no reasonable dispute that the Accused Products literally meet this limitation of claim 8.

**C.   Bridgeport Infringes Claim 8 Under The Doctrine Of Equivalents.**

Even if an accused product does not literally infringe a claim of the patent at issue, the accused product still may infringe the patent "if each limitation of the claim is met in the accused device . . . equivalently." *Catalina Marketing Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002) (quoting *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998) (*en banc*)). Equivalency, also a question of fact, may be found if "the elements of the accused device are substantially equivalent to the corresponding elements of the asserted claim." *See Arlington*, 290 F. Supp.2d at 520 (citing *Warner-Jenkinson Co.*, 520 U.S. at 29).

Bridgeport erroneously asserts that Arlington cannot rely upon the doctrine of equivalents to show the Accused Products contain outwardly sprung members because of alleged actions taken during prosecution of the parent of the '050 Patent. As Arlington has consistently demonstrated, prosecution history estoppel does not apply to the facts of this case.

**1.   Prosecution History Estoppel Is Inapplicable**

Bridgeport attempts to cite the recent *Honeywell* case out of context to create the impression that the law in this area has changed as applied to the facts in this case, but this is simply not true. *See Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.*, 2008 U.S. App. LEXIS 8405 (Fed. Cir. Apr. 18, 2008) (attached to SOMF as Exhibit "AA"). Bridgeport asserts that, under *Honeywell*, it is entitled to

summary judgment of non-infringement based upon the doctrine of equivalents. Bridgeport claims that Arlington is estopped from relying upon the doctrine of equivalents because it narrowed claim 8 of the '050 patent during prosecution. Bridgeport Br. at 13. That argument is both factually and legally wrong.

The only similarity between *Honeywell* and this case is that a claim that was originally dependent was rewritten as an independent claim.  But *Honeywell* does not stand for the proposition that any time a dependent claim is rewritten as an independent claim that prosecution history estoppel automatically applies.

###### a.   The Law of Prosecution History Estoppel

Contrary to Bridgeport's argument, it is still the case that prosecution history estoppel simply "prevents a patent owner from recapturing with the doctrine of equivalents subject matter surrendered to acquire the patent."  *Id. at* *11.  The actual holding in *Honeywell*, which is neither new or novel, is as follows: "[r]ewriting of dependent claims into independent form **coupled with the cancellation of the original independent claim** creates a presumption of prosecution history estoppel."  *Id.* at *1-2; *Honeywell Int'l Inc. v. Hamilton Sundstrand, Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004)(emphasis added).

For a presumption of surrender to arise, the dependent claim must have been rewritten into independent form in conjunction with a ***cancellation*** of an original independent claim and to replace that independent claim.  *See Honeywell*, 370 F.3d

at 1143 ("[C]anceling a broader independent claim and *replacing* it with a dependent claim rewritten into independent form was a 'clear surrender of the broader subject matter' that presumptively barred application of the doctrine of equivalents.") citing *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,* 347 F.3d 1314, 1325 (Fed. Cir. 2003) (emphasis added).  For the presumption to apply, there must have been a substitution of the narrower claim for the cancelled broader claim demonstrating that "there was a clear surrender of subject matter because the narrower rewritten claim had been *substituted* for the broader original independent claim." *Id.* (citing *Ranbaxy Pharms., Inc. v. Apotex, Inc.,* 350 F.3d 1235, 1241 (Fed. Cir. 2003)) (emphasis added).  That is simply not the case here.

### b.     The Presumption of Surrender Does Not Apply

Bridgeport incorrectly claims that Arlington narrowed Claim 8 of the '050 patent during prosecution history.   Bridgeport Br. at 13.   Not surprisingly, Bridgeport cites to no evidence, other than a wholly unsupported statement in the report of Bridgeport's expert. *Id.* at 14.   In fact, nothing could be further from the truth.

This court has already examined the prosecution history as it relates to originally filed claims 1 and 2 of the '164 patent application and claim 8 of the '050 patent. As this Court is fully aware, Arlington never amended or narrowed

Claim 8. It issued as filed, with no prosecution. *See* Dkt No. 376 at 13. The *Honeywell* presumption does not apply to the facts of this case because Arlington never *cancelled* independent originally filed claim 1 nor replaced it with originally filed claim 2 in response to the Examiner's rejection.

It is true that originally filed claim 1 was rejected in light of the prior art reference issued to Recker. Where Bridgeport's argument strays from the facts is when it asserts that "Arlington overcame that rejection" by "combin[ing] originally filed independent claim 1 with originally filed dependent filed claim 2." Bridgeport Br. at 14. That argument is not only untrue but is disingenuous. Bridgeport is well aware that Arlington did not overcome the Recker rejection by combining originally filed claims 1 and 2.

As this Court already acknowledged:

> In seeking to have the '164 patent issued, Arlington did not rewrite claim 2 in independent form. ***Instead, Arlington chose to amend originally-filed claim 1 to include a "less than a complete circle limitation" to distinguish the claim from the Recker patent***. See Doc. 284, Ex. 2 at col. 9; see also Doc. 284, Ex. 5 at 5 ("Both Claims 1 and 13 have been amended in a manner to distinguish them from Recker."

*See* Dkt No. 376 at 13 (emphasis added).

This Court recognized that Arlington did not combine originally filed claims 1 and 2 to overcome Recker. Arlington ***amended*** (not ***cancelled***) originally filed claim 1 by adding the less than a complete circle limitation to overcome the Recker

rejection.[4]   In fact, Arlington did not combine those claims until it filed the '050

patent application.   As this Court noted, application claim 22, which issued as

Claim 8, was "allowed with no objection."   *Id*. at 13.   Contrary to Bridgeport's

arguments, the *Honeywell* presumption does not apply to the prosecution of Claim

8 and the "outwardly sprung limitation". Arlington never "cancelled a broader

independent claim and *replac[ed]* it with a dependent claim rewritten into

independent form." *See Honeywell*, 370 F.3d at 1143. *Honeywell* does not apply

because Arlington never *substituted* the narrower dependent claim (originally filed

claim 2) for the cancelled broader original independent claim (originally filed

claim 1) in response to the Examiner's rejection based on Recker.

Thus, Arlington is not estopped from relying upon doctrine of equivalents

for this limitation.

### c.   If the Presumption Does Apply, Arlington Is Entitled to Overcome The Rejection

Assuming, *arguendo*, that there was a presumption of prosecution history

estoppel, Arlington is entitled to overcome the presumption if it establishes that:

"(1) 'the alleged equivalent would have been unforeseeable at the time of the

narrowing amendment,' or (2) 'the rationale underlying the narrowing amendment

---

[4] Arlington's amendment to originally filed claim 1, in response to the Recker rejection, is an example of a possible estoppel situation for the limitation "less than a complete circle" contained in Claim 1 of the '164 patent.  For example, were Arlington to assert infringement of Claim 1 of the '164 patent against a device with no split in the adaptor, it would have to overcome the estoppel presumption.

bore no more than a tangential relation to the equivalent in question,' or (3) 'that there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent.'" *See* Ex. AA, Honeywell, 2008 U.S. App. LEXIS 8405 at * 13 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359,* 1369 *(Fed. Cir. 2003) (en banc) (Festo IX)).*

The *Festo* presumption is a question of law for the Court. There are, however, underlying factual issues relevant to the determination. Such issues are, however, properly resolved by the Court. *Id.* This creates a difficult procedural quagmire for the Court where there are claims of literal infringement and under the doctrine of equivalents. The Court in *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*[5] provided guidance for how District Courts should address this procedural quagmire:

> There are four possible outcomes: 1) The court rules there is no infringement either literally or under the doctrine of equivalents. The Festo issue is gone. 2) The court rules that there is literal infringement. Normally, any lurking Festo issue now drops out of the case. 3) The court rules that there is no literal infringement but infringement may exist under the doctrine of equivalents. In this one circumstance, judicial economy may counsel proceeding directly to a Festo hearing before the court. . . . 4) There remain genuine issues of material fact concerning literal infringement. In this instance, the best course is to defer any consideration of Festo issues until after the jury trial. . . .

*Id.* at 136.

---

[5] 287 F. Supp.2d 126 (D. Mass. 2003), later proceeding at, 339 F. Supp.2d 202 (D. Mass. 2004), *rev'd in part on other grounds*, 457 F.3d 1293 (Fed. Cir. 2006).

Here, Arlington has established literal infringement, as a matter of law. *See* Dkt Nos. 383, 384, and 396. Thus, under the second example above, even if there was a *Festo* issue, it would drop out of the case. Assuming, however, the Court concludes that summary judgment of literal infringement is not appropriate, and that material facts remain in dispute, the rebuttable presumption would be properly deferred until after the jury's determination of the salient issues (including whether infringement exists under the doctrine of equivalents).[6] Otherwise, the Court must schedule a hearing to address the *Festo* presumption issues in advance of the trial. In either case, Arlington is entitled to a hearing on the *Festo* presumption.

Accordingly, summary judgment in favor of Bridgeport on the basis of prosecution history estoppel is simply improper.

### 2. Bridgeport is Not Entitled to Summary Judgment on the Doctrine of Equivalents

Perhaps recognizing the lack of merit to its prosecution history estoppel argument, Bridgeport also asserts that it is entitled to summary judgment because the Accused Products "function in a substantially different way and achieve a substantially different result than the patented adapter." Bridgeport Br. at 18. This argument is simply baseless.

---

[6] Bridgeport asserts that is entitled to summary judgment of no literal infringement and on the doctrine of equivalents. Those arguments lack merit. Even if the Court determined that there was no literal infringement, as a matter of law, the proper course according to *Amgen* would be to schedule a *Festo* hearing before the Court.

### a.    The Grounding Tangs On The Accused Products Are Equivalent to the Outwardly Sprung Claim Limitation

An element in a claim is equivalent to a claim limitation when the differences between the two are insubstantial to one skilled in the art. *Catalina Marketing Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002) (quoting *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998) (*en banc*)).    To decide whether the differences are insubstantial, the court must determine whether the accused product performs substantially the same function in substantially the same way to obtain the same result as the claim limitation in the patent. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d. 1320, 1326 (Fed. Cir. 2007); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).    The doctrine prevents an accused infringer from avoiding infringement by changing minor details of a claimed invention while retaining its essential functionality. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997).

The function of the outwardly sprung members of the Asserted Claim is to provide electrical and mechanical continuity between the fully assembled connector and the junction box when the connector is inserted and locked into place. *See* Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶ 20.  Bridgeport admits that its adaptors perform this same function.   *See* Bridgeport Br. at 16. Notwithstanding this admission, Bridgeport claims that its adaptor performs the

same function in a substantially different way to achieve a substantially different result.

The "way" that Claim 8 requires the outwardly sprung members perform this function is by being resilient and by being part of the adaptor with a portion of the members extending to the trailing end of the adaptor so that the outwardly sprung members, normally having a wider diameter than the knockout hole, spring inward and provide contact and maintain tension on the knockout hole walls upon full insertion. *See* Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶¶ 19-23.

Bridgeport's tensioning tangs are made of spring metal and are therefore resilient. They are also clearly part of the adaptor with a portion of the members extending to the trailing end of the adaptor. *Id*. at ¶ 21. Bridgeport acknowledged that in order for Accused Products to function, the tensioning tangs must have a larger diameter than the hole in the junction box so that when inserted, the tensioning tangs compress inwards and spring outward due to their resiliency. *See* Exh. M, Kiely Tr., 11/13/07, at 40-47; Exh. E, Auray Tr., 11/7/06, at 86-88. Upon insertion, the tensioning tangs exert an outward force on the hole of the junction box. *See* Exh. O, Rahn Trial Expert Report, 6/1/07, at ¶ 21. This tension creates continuity and additional tightness in the box. The result is that the fully assembled connector is mechanically and electrically connected to the junction box at the trailing end of the adaptor. *Id*. at ¶ 21. The tensioning tangs on Bridgeport's

adaptors clearly conduct ground to the junction box at the trailing end of the adaptor.  *Id*. at ¶ 21; *see also* Exh. E, Auray Tr., 11/7/06, at 79-81.   The tensioning tangs clearly function by conducting ground in the same "way" as the claimed "outwardly sprung members."

Bridgeport also claims that its tensioning tangs achieve a substantially different result because its adaptors have more contact zones with the hole of the junction box, and thereby achieve "improved electrical continuity".  Bridgeport Br. at 17.  Claim 8 requires the outwardly sprung members to conduct ground; but there is no specific conductivity test, such as the "millivolt drop" test, in the claim limitation as Bridgeport maintains.  Bridgeport's adaptors do not avoid Claim 8 by touching the inside hole in more locations than the claim requires.  The adaptors achieve the result claimed in Claim 8 because the Accused Products' tensioning tangs conduct ground and keep the adaptor tight inside the hole.  *See* Exh. O, Rahn Trial Expert Report, 6/1/07,  at ¶ 21.

Because Bridgeport's tensioning tangs perform substantially the same function, in substantially the same way, to achieve substantially the same result, the Bridgeport Accused Products contain equivalent structures to the outwardly sprung members of claim 8 of the '050 patent.

## IV.   CONCLUSION

The facts demonstrate that the Accused Products literally or equivalently meet each element of claim 8 of the '050 patent.   Accordingly, Arlington respectfully requests that this Court deny Bridgeport's motion.

Dated:  May 22, 2008

Respectfully submitted,

By:_____/s/ Mark L. Hogge_____
Mark L. Hogge (admitted *pro hac vice*)
Shailendra Maheshwari (admitted *pro hac vice*)
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006
Telephone:  (202) 331-3100
Facsimile:  (202) 331-3101

Kathryn L. Clune (admitted *pro hac vice*)
Crowell & Moring
1001 Pennsylvania Ave, N.W.
Washington, DC 20004-2595
Telephone:  (202) 624-2705
Facsimile:  (202) 628-5116

Robert J. Tribeck
Rhoads & Sinon LLP
One South Market Square
Harrisburg, PA 17108-1146
Telephone:  (717) 223-5731
Facsimile:  (717) 231-6637

Auzville Jackson, Jr., (admitted *pro hac vice*)
8652 Rio Grande Road
Richmond, VA  23229
Telephone:  (804) 740-6828

*Attorneys for Arlington Industries, Inc.*

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that the although the foregoing Memorandum of Points and Authorities in Support of its Motion for Summary Judgment of Infringement exceeds the 15 page limitation of Local Rule 7.8(b)(1), the Brief contains 5,967 words.


<u>/s/ Robert J. Tribeck</u>
Robert J. Tribeck, Esquire

## CERTIFICATE OF SERVICE

I certify that on May 22, 2008, a true and accurate copy of the foregoing document was served upon the following via electronic mail in accordance with the Court's guidelines:

Alan Anderson, Esquire
Fulbright & Jaworski LLP
2100 IDS Center
Minneapolis, MN  55402-2112
**aanderson@fulbright.com**

Robert N. Gawlas, Jr.
Rosenn Jenkins & Greenwald, LLP
15 South Franklin Street
Wilkes Barre, PA  18711
**rgawlas@rjglaw.com**

/s/ Robert J. Tribeck
Robert Tribeck