# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:01-CV-0485** |
| | : | |
| Plaintiff | : | **(CONSOLIDATED)** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| Defendant | : | |
| ----------------------------------------------------------------------- | | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| Consolidated Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **ARLINGTON INDUSTRIES, INC.,** | : | |
| | : | |
| Consolidated Defendant | : | |

## **MEMORANDUM**

Presently before the court are two motions filed by Bridgeport Fittings, Incorporated ("Bridgeport"). The first is a motion (Doc. 561) to stay trial pending determination of Bridgeport's motion for summary judgment of claim and issue preclusion, and the second is a motion (Doc. 563) for leave to file a motion for summary judgment of claim and issue preclusion. Bridgeport filed both of these motions on September 1, 2009. Two days later the court held a pretrial conference, during which both motions were addressed on the record. (<u>See</u> Doc. 571.) Bridgeport urged the court to grant its motions and to stay jury selection in the above-captioned lawsuit, which is scheduled to commence on September 14, 2009,

(see Doc. 474). Arlington Industries, Incorporated ("Arlington") opposed the motions and argued that res judicata does not apply in the instant matter. (See Doc. 571 at 33.) The court indicated to the parties that it was inclined to deny Bridgeport's motions and proceed with trial. (See id. at 61.) Following the pretrial conference, however, both parties were permitted to file points of authorities supportive of their arguments. (Id. at 67.) The court explained that it would thereafter issue a final order ruling upon the motions. (Id. at 66.) Each party's authorities have been received and reviewed and the matter is ripe for disposition. For the reasons stated below, and on the record at the pretrial conference, Bridgeport's motions will be denied.

This is a consolidated patent infringement suit with origins in 2001 when Arlington sued Bridgeport for infringing United States Patent Number 5,266,050 (the "'050 patent").[1] (See Doc. 1.) The litigation proceeded for three years, but settled on the eve of trial. Bridgeport and Arlington entered into a consent decree on April 7, 2004, wherein Bridgeport (1) stipulated to the '050 patent's validity, (2) admitted that its "Snap-In" and "Speed-Snap" electrical fittings infringed the '050 patent, and (3) submitted to entry of a permanent injunction prohibiting it from making, using, selling, offering for sale, or importing the infringing products or "any colorable imitations of such products." (See Doc. 270.) A stipulation of

---

[1] An extensive discussion of the underlying facts of the case appears in the court's memorandum (Doc. 471) dated February 4, 2009. See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 610 F. Supp. 2d 370 (M.D. Pa. 2009). Familiarity with this opinion is presumed.

2

dismissal was entered on April 15, 2004, and the above-captioned matter was closed. (Doc. 251.)

In September 2005, Bridgeport designed a new electrical fitting, which it denominated the "Whipper-Snap." (Doc. 404 ¶ 14; Doc. 432 ¶ 14.) Several months later, Arlington notified Bridgeport that various models in its Whipper-Snap product line infringed claim 8 of the '050 patent. (Doc. 404 ¶ 17; Doc. 432 ¶ 17.) Bridgeport responded by filing a suit for declaratory judgment of non-infringement on December 19, 2005. This matter was initially assigned to the Honorable A. Richard Caputo. (See Bridgeport Fittings, Inc. v. Arlington Indus., Inc., No. 3:05-CV-2622 (M.D. Pa.), Dkt. No. 1.) In its complaint for declaratory judgment, Bridgeport averred that its Whipper-Snap products were "substantially and materially different" from the Snap-In and Speed-Snap fittings, (id. ¶ 12), and requested a judgment of non-infringement for the electrical fittings designated by catalog numbers 38ASP, 380SP, 841SP, 846SP, 850SP, 8400SP, GF38SP, SG38ASP, and SG38SP, (see id. ¶ 2).

On February 1, 2006, Arlington countersued, contending that the nine products identified in Bridgeport's complaint infringed its '050 patent, and that Bridgeport was in breach of the settlement agreement entered between the parties in 2004. (See Bridgeport Fittings, Inc. v. Arlington Indus., Inc., No. 3:05-CV-2622 (M.D. Pa.), Dkt. No. 18 ¶¶ 9, 18-22.) Arlington simultaneously moved to transfer the declaratory judgment action to the undersigned, a motion which Judge Caputo granted on February 6, 2006, (see id., Dkt. No. 19.) In an order dated April 6, 2006,

3

the undersigned consolidated the 2005 declaratory judgment action with Arlington's earlier suit for infringement, and reopened the above-captioned matter. (Doc. 267.)

On May 31, 2006, Arlington filed a separate patent infringement suit, alleging that two of Bridgeport's Whipper-Snap connectors—catalog numbers 3838ASP and 3838SP—were infringing United States Patent 6,521,831 (the "'831 patent"). This case was assigned to Judge Caputo, presumably because it concerned a distinct patent and different products. (See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 3:06-CV-1105 (M.D. Pa.) ("Arlington II"), Dkt. No. 1.) On June 27, 2006, Arlington amended its complaint in Arlington II, alleging that the same Bridgeport products, 3838ASP and 3838SP (hereinafter "the duplex connectors") also infringed the '050 patent. (Arlington II, Dkt. No. 3 ¶¶ 10-14.) Neither party moved to consolidate Arlington II with the above-captioned action, and the lawsuits thereafter proceeded on distinct, but parallel tracks.[2]

Insofar as they related to the '050 patent, the parties' respective claim construction arguments were essentially identical in both the instant matter and Arlington II. (Compare Doc. 283, with Arlington II, Dkt. No. 53 (setting forth Bridgeport's claim construction arguments), and Doc. 286, with Arlington II, Dkt.

---

[2] At the pretrial conference, Arlington's counsel explained that "we . . . asked for [Arlington II] to be transferred, and [Judge Caputo] indicated that he would not be willing to do that because there was the additional patent," namely the '831 patent. (Doc. 571 at 31-32.) Apparently this request occurred during "an informal discussion in chambers," and thus is not reflected in the record. (See id. at 32.)

No. 54 (setting forth Arlington's claim construction arguments)). Judge Caputo issued an order construing claim 8 of the '050 patent on December 4, 2007. (Arlington II, Dkt. No. 98.) Both parties thereafter filed letter briefs in the above-captioned matter, highlighting the portions of Judge Caputo's claim construction that each found favorable, and denouncing aspects of the opinion with which each party disagreed. (See Docs. 372, 373.) Neither party argued that Judge Caputo's Markman construction was binding in the above-captioned matter, nor did either urge this court to adopt the Arlington II construction *in toto*.[3] On February 25, 2008, this court issued its claim construction, which differed from Judge Caputo's construction in certain material respects. (Compare Doc. 376, with Arlington II, Dkt. No. 98.) The court explained the conflicting construction in a footnote, as follows: "The undersigned is well aware of my colleague's claim construction of these disputed terms in a separate proceeding. Neither party has asserted that I am bound by Judge Caputo's claim construction, and I have undertaken an independent review of the disputed terms based upon the evidence of record." (Doc. 376 at 4 n.3.)

These inconsistent claim constructions essentially cabined the respective cases going forward. The parties in Arlington II focused upon whether the duplex connectors possessed "spring metal adaptors." (Arlington II, Dkt. No. 307.) The primary dispute in the instant matter has centered upon the existence of

---

[3] The court first became aware that Arlington II implicated infringement of the '050 patent when it received these letters from counsel. (See Doc. 571 at 27-28.)

"outwardly sprung members" in the fifteen (and now thirty) Whipper-Snap products that Arlington accuses of infringement. (See Doc. 471.) In hindsight, it was incumbent upon the litigants to prevent claim 8 from being construed in such a conflicting manner. That neither party did so is the cause of the court's present dilemma. Bridgeport now contends that the products at issue in both cases are identical. (See Doc. 571.) This certainly was not apparent to the court. If it were clear to the parties, then it was readily foreseeable, upon receipt of the Markman ruling in Arlington II, that a conflicting interpretation of claim 8 in this court may eventually lead to an inconsistent result.

The parties also failed to raise a law of the case argument prior to the undersigned's Markman disposition. The law of the case doctrine counsels that "[i]ssues decided at an earlier stage of the same litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." HARMON, PATENTS AND THE FEDERAL CIRCUIT, at 1458 (9th ed. 2009). Although the doctrine is typically confined to subsequent determinations *in the same litigation*, the Federal Circuit has endorsed a district court's application of the law of the case to preclude redetermination of a claim's construction when a previous court construed the identical claim and the underlying facts were the same. See Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1324 (Fed. Cir. 1986). The undersigned is aware that the law of the case would not have *mandated* that Judge Caputo's claim construction be adhered to, see Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991), but the pertinent point is that the parties failed raise the issue.

This omission, coupled with the failure to request consolidation, certainly cuts against Bridgeport, the party now vociferously protesting the possibility of inconsistent judgments.[4]

On September 18, 2008, Judge Caputo granted Bridgeport summary judgment of non-infringement with respect to the '050 patent. (See Doc. 307.) Both parties notified the court of the Arlington II decision, but neither intimated that the decision may portend a res judicata result, nor did either request a stay or leave to file supplemental briefing. In a notice of supplemental authority filed with the court, Bridgeport simply stated that Judge Caputo's ruling indicates that "there are at least substantial issues relating to infringement thus precluding Bridgeport's products from being 'colorable imitations,' and establishing that Bridgeport did not act with objective recklessness and thus cannot have willfully infringed." (Doc. 467 at 2.)

In the above-captioned matter, cross-motions for summary judgment were denied on February 4, 2009, and the parties were immediately instructed to prepare for trial. (See Docs. 471-72, 474.) Jury selection was scheduled a full seven months

---

[4] The court cannot help but comment upon the "heads-I-win, tails-you-lose" strategy employed by Bridgeport prior to issuance of the undersigned's claim construction. Although Bridgeport now argues that Judge Caputo's claim construction is binding in this case, it previously wrote that "Judge Caputo did not correctly construe every disputed claim term," and then urged the court to follow the Arlington II holding only to the extent it was favorable to Bridgeport. (Doc. 372 at 2.) This fact alone does not estop Bridgeport from asserting res judicata, but it demonstrates an opportunistic approach to parallel proceedings for optimally favorable results.

7

in advance.  (See Doc. 474.)  Not once during that period of time did Bridgeport request to stay trial, or even inform this court that entry of final judgment was looming, or that it would raise a res judicata argument.  The parties began briefing an extensive number of motions in limine in June 2009; in hundreds of pages of briefing, there is nary a mention of the potential for inconsistent judgments.  Rather, it was not until Bridgeport filed its pretrial memoranda, on August 12, 2009, that there was any indication that it would seek to delay commencement of trial because of res judicata.  (See Doc. 528 at 19-20.)

Judge Caputo entered final judgment in Arlington II on September 1, 2009.  (See Arlington II, Dkt. Nos. 349-51.)  It is true that Bridgeport immediately filed the instant motion to stay, and the court has taken notice of Bridgeport's assertion that it repeatedly asked Judge Caputo to enter final judgment prior to this date, but that he did not do so.  (See Doc. 571 at 39-41.)  However, it is not evident—as Bridgeport's counsel asserts—that Bridgeport has "been doing *everything* we can" so that claim and issue preclusion could be properly raised before the undersigned.  (See id. at 41 (emphasis added)).  Prior to August 12, 2009, Bridgeport had not once notified this court of its intention to argue res judicata.  Bridgeport never warned the court that it may request a stay on the eve of trial, or that it may be prudent to refrain from setting a trial date until Arlington II was resolved.  Bridgeport simply allowed this court to remain ignorant of its contention that all of the Whipper-Snap products were identical, and that a liability determination in the instant matter is precluded by Judge Caputo's September 2008 order.  This is simply unacceptable.

It was incumbent upon Bridgeport to apprise the undersigned of such information, to warn the court that entry of final judgment was imminent, and to raise with this court its argument that the fifteen products in dispute in the above-captioned matter were "essentially the same" as those at issue in Arlington II.

Bridgeport invokes res judicata, now asserting that every product in the Whipper-Snap catalog is identical for purposes of patent infringement. This argument was first raised on September 1, 2009, and it is an argument the merits of which the court has not decided. As a technical matter, the products are different. Determining whether the products are "essentially the same" is an inquiry that requires briefing and argument, but it is not self-evident. See Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1324-25 (Fed. Cir. 2008) (explaining that a court must compare accused devices before determining that they are "essentially the same"). The constructions for the terms in the instant suit are different from those that were before Judge Caputo. Nystrom v. Trex Co., Inc., --- F.3d ---, 2009 WL 2871357, at *3 (Fed. Cir. Sept. 8, 2009) (inquiring whether the construction in a second patent suit was identical to the construction in the first suit prior to imposing res judicata). It is Bridgeport's burden to establish that each of the approximately thirty Whipper-Snap models is essentially the same, see Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469, 480 (Fed. Cir. 1991), and this was a burden Bridgeport made no attempt to shoulder until September 3, a mere eleven days before jury selection.

A substantial effort has been expended to prepare this case for trial. Numerous motions have been briefed and adjudicated, witnesses and advocates

have been assembled, and the court's docket is clear. On the precipice of opening statements, Bridgeport raised an argument that should have been proffered at least one year ago, and now complains about parallel litigation when all along it was content with dual proceedings. In short, Bridgeport lacks clean hands and it is estopped from raising its res judicata argument with respect to the majority of the Whipper-Snap products. See Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936) (explaining that a district court maintains the "inherent power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). The court will excise from the trial the two products held non-infringing in Arlington II and delay the presentation of evidence on these products until res judicata issues receive appropriate briefing. As for the approximately thirty models upon which no judgment has yet been entered, they will remain subject to disposition by the trier of fact beginning four days hence.

     An appropriate order follows.


        S/ Christopher C. Conner  
       CHRISTOPHER C. CONNER  
       United States District Judge


Dated:      September 10, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:01-CV-0485** |
| | : | |
| Plaintiff | : | **(CONSOLIDATED)** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| Defendant | : | |

-----------------------------------------------------------------------------

| | | |
|---|---|---|
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| Consolidated Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **ARLINGTON INDUSTRIES, INC.,** | : | |
| | : | |
| Consolidated Defendant | : | |

## **ORDER**

AND NOW, this 10th day of September, 2009, upon consideration of Bridgeport Fittings' motion (Doc. 561) to stay trial pending determination of the motion for summary judgment of claim and issue preclusion, and the motion (Doc. 563) for leave to file a motion for summary judgment of claim and issue preclusion, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the motions (Docs. 561, 563) are DENIED.

                                                              S/ Christopher C. Conner
                                                            CHRISTOPHER C. CONNER
                                                             United States District Judge