# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:01-CV-0485** |
| **Plaintiff** | : | **(CONSOLIDATED)** |
| v. | : | **(Judge Conner)** |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| **Defendant** | : | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| **Consolidated Plaintiff** | : | |
| v. | : | |
| **ARLINGTON INDUSTRIES, INC.,** | : | |
| **Consolidated Defendant** | : | |

## **MEMORANDUM**

Presently before the court are two motions to alter or amend the non-final judgment entered by the court on October 7, 2009. (See Doc. 638.) The first, filed by Bridgeport Fittings, Incorporated ("Bridgeport"), requests (1) that the court enter final judgment in its favor with respect to two Whipper-Snap connector models adjudged non-infringing in a parallel litigation before a second federal court, (2) amend duplicative damage amounts awarded by the jury in the matter herein, and (3) amend the total damages awarded for infringement by connector model 802SP. (See Doc. 648.) Arlington Industries, Incorporated ("Arlington") has also filed a motion to amend judgment, wherein it requests that the court amend

the damages award to include prejudgment interest for patent infringement beginning December 6, 2005 through October 7, 2009, and award prejudgment interest for breach of contract beginning October 15, 2005 through October 7, 2009. (See Doc. 640.)  For the reasons that follow, both motions will be granted in part and denied in part.

I.      **Relevant Background & Procedural History**[1]

Litigation concerning claim 8 of United States Patent Number 5,266,050 (the "'050 patent") has been ongoing between the instant parties since at least 2001, when Arlington sued Bridgeport for infringement.  The lawsuit continued for three years before it settled on the eve of trial.  On April 7, 2004, the parties entered a settlement agreement wherein Bridgeport (1) stipulated to the '050 patent's validity, (2) admitted that its "Snap-In" and "Speed-Snap" electrical connectors infringed the '050 patent, and (3) submitted to entry of a permanent injunction prohibiting it from making, using, selling, offering for sale, or importing the infringing products or "any colorable imitation of such products."  (See Doc. 270.)

Approximately one year later, Bridgeport designed a new quick-connect electrical fitting, which it denominated the "Whipper-Snap."  On or before October 15, 2005, Bridgeport placed these new devices onto the market.  Counsel for Arlington contacted Bridgeport's counsel on November 18, 2005, and expressed concerns regarding the design of the Whipper-Snap connectors.  A meeting was

---

[1] The parties are familiar with the circumstances of the present dispute and, therefore, the court will relate only information that is pertinent to this memorandum.

2

arranged for December 6, 2005, at which time Arlington suggested that the Whipper-Snap connectors infringed claim 8 of the '050 patent. Thirteen days later, Bridgeport filed a complaint for declaratory judgment of non-infringement. (See Doc. 471 at 8.)

On May 31, 2006, Arlington filed a parallel suit for infringement before the Honorable A. Richard Caputo. (See Bridgeport Fittings, Inc. v. Arlington Indus., Inc. ("Arlington II"), No. 3:06-CV-1105 (M.D. Pa.), Dkt. No. 1.) Arlington therein alleged that two of Bridgeport's Whipper-Snap connector models—catalog numbers 3838ASP and 3838SP (hereinafter the "duplex connectors")—were infringing both the '050 patent and United States Patent Number 6,521,831 (the "'831 patent"). During the course of this lawsuit, Judge Caputo construed claim 8 of the '050 patent in a way that was inconsistent with the undersigned's construction of the same claim in the above-captioned matter. Arlington II thereafter proceeded to summary judgment, and Judge Caputo held that the duplex connectors did not infringe claim 8 as a matter of law.[2]

The duplex connectors, which Judge Caputo found non-infringing as a matter of law, constituted two of the thirty-two connector models Arlington accused of infringement in the instant suit. Thirteen days prior to commencement of trial, Bridgeport moved to stay the proceedings and argued that the final judgment in Arlington II carried res judicata effect herein. The court weighed several competing concerns in assessing Bridgeport's motion, including the uncertain

---

[2] For a more detailed explanation of the parallel litigation and the difficulties engendered by this litigation strategy, see Dkt. No. 584 and Dkt. No. 773 at 9-20.

applicability of issue or claim preclusion, the timing of Bridgeport's request for a stay, the parties' significant trial preparation expenditures, and the expeditious presentation of issues for appellate review. (See Doc. 584; Doc. 773 at 9-12.) Ultimately, the court excised from trial the duplex connectors adjudged non-infringing in Arlington II and delayed presentation of evidence on these products pending full briefing of Bridgeport's res judicata arguments. (See Doc. 584; Doc. 773 at 9-12.)

The matter thereafter proceeded to a jury trial on the remaining thirty Whipper-Snap connector models. After two weeks of presentation, the jury returned a verdict that twenty-nine of the accused products literally infringed claim 8 of the '050 patent, and one connector, the 802ASP, infringed claim 8 under the doctrine of equivalents. (See Doc. 632.) In addition, the jury held that twenty-six Whipper-Snap connectors were colorable imitations of the enjoined Snap-In and Speed-Snap connectors. The jury awarded infringement damages of $2,772,373 in lost profits and $662,278.54 in reasonable royalties. The jury awarded $2,780,555 in damages for Bridgeport's breach of contract. (See id.) The court thereafter entered the jury's verdict as a non-final judgment on October 7, 2009. (See Doc. 638.)

## II. Standard of Review

A party may move to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e). A motion under this provision "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, --- U.S. ---, 128 S. Ct.

2605, 2617 (2008) (quoting 11C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)). "A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). In addition, postjudgment motions for prejudgment interest are commonly pursued under Rule 59(e). See Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1192 (3d Cir. 1992).

## III. Discussion

The parties have filed competing motions to alter or amend the non-final judgment pursuant to Federal Rule of Civil Procedure 59(e). Bridgeport requests that the court (1) enter final judgment in its favor with respect to the duplex connector models held non-infringing as a matter of law in Arlington II; (2) amend the duplicative damage amounts awarded by the jury; and (3) amend the total damages awarded for infringement by connector model 802SP. (See Doc. 648.) Arlington moves the court to amend the damage award to include prejudgment interest for patent infringement beginning December 6, 2005 through October 7, 2009, and prejudgment interest for breach of contract from October 15, 2005 through October 7, 2009. (See Doc. 640.) The court will address these issues *seriatim*.

### A. **Bridgeport's Motion**

#### 1. **The Duplex Connector Models**

In the instant matter, Bridgeport sought a declaratory judgment of non-infringement for each of the thirty-two Whipper-Snap connector models accused of infringing claim 8.  Thirty of the Whipper-Snap models were adjudged infringing by the jury.  However, Bridgeport's request for declaratory judgment remains pending with respect to the duplex connectors—models 3838ASP and 3838SP—which were excised from trial after Judge Caputo held them to be non-infringing as a matter of law in Arlington II.  Bridgeport argues that Judge Caputo's final judgment carries res judicata effect in the instant suit and compels entry of a judgment of non-infringement on these devices, as well as a conclusive finding that neither duplex connector constitutes a colorable imitation of one of the previously enjoined Snap-In or Speed-Snap products.

In a separate post-trial memorandum and order, the court has held that the final judgment entered in Arlington II is not claim preclusive of the jury's infringement and breach of contract verdict.  (See Doc. 773 at 17-20.)  Federal Circuit law explains that "an infringement claim in a second suit is the 'same claim' as in an earlier infringement suit if the accused products in the two suits are 'essentially the same.'"  Roche Palo Alto LLC v. Apotex, Inc., 531 F.3d 1372, 1379 (Fed. Cir. 2008).  In its prior order, the court ruled that Bridgeport did not carry its burden of proof to demonstrate that the duplex connectors are "essentially the same" as the thirty Whipper-Snap models adjudged infringing herein.  (See Doc.

773 at 17-20.) No such difficulty is present with respect to the duplex connectors still awaiting judgment, for these are precisely *the same connector models* which Judge Caputo held non-infringing as a matter of law in Arlington II. See Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1324 (Fed. Cir. 2008) ("Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'") Because the duplex connectors are identical products to those adjudged non-infringing by Judge Caputo, the requirements of claim preclusion are met. (See Doc. 773 at 17-18 (setting forth claim preclusion standard)). Bridgeport is thus entitled to judgment of non-infringement as a matter of law on the duplex connectors.[3,4]

### 2. **Duplicative Damage Amounts**

Following trial, the jury awarded Arlington $2,772,373 in lost profits for patent infringement, a reasonable royalty of $662,278.54, and $2,780,555 in damages for breach of contract. (See Doc. 632.) The jury was provided with a special verdict form so that the damage amount for each cause of action would be clear, and the court informed the triers of fact that the damage awards "are not aggregated. By that I mean added together. If you award damages under both infringement and breach of contract, Arlington will only receive the larger of the two damage

---

[3] A judgment of non-infringement also compels a judgment that Bridgeport did not breach its contract by placing the duplex connectors into the marketplace. Quite simply, if an accused product does not infringe the patent claim in question, it cannot constitute a colorable imitation of a previously enjoined product. See KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1526-27 (Fed. Cir. 1985).

[4] In light of the court's ruling on Bridgeport's claim preclusion argument, it is unnecessary to reach a disposition on the applicability of issue preclusion.

7

awards." (Doc. 663 at 159.)  Bridgeport argues that the damages awarded for lost profits are duplicative of the amount calculated as a reasonable royalty for infringing sales.  Furthermore, Bridgeport contends that the infringement and breach of contract damages are duplicative, and moves the court to omit the lesser of the two awards.  (See Doc. 687 at 10-12.)

Double recovery of damages is typically impermissible.[5]  Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1017 (Fed. Cir. 2006).  The Federal Circuit has explained, "The law is clear that the jury may award separate damages for each claim, 'leaving it to the judge to make appropriate adjustments to avoid double recovery.'"  Bowers v. Baystate Techs., Inc., 320 F.3d 1317, 1327 (Fed. Cir. 2003) (quoting Britton v. Maloney, 196 F.3d 24, 32 (1st Cir. 1999)).  Damage awards are duplicative when they compensate for the same injury and arise out of the same set of operative facts.  See Aero Prods., 466 F.3d at 1019; Junker v. Eddings, 396 F.3d 1359, 1368 (Fed. Cir. 2005); Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1362 (Fed. Cir. 1998).  Thus, if a party is twice compensated for the harm suffered from the same conduct, it falls to the district judge to omit those damages that are duplicative.  See Bowers, 320 F.3d at 1327-28.

Section 284 of the Patent Act allows an injured patentee to recoup "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284.

---

[5] The appropriateness of an award for patent damages is a matter unique to patent law, requiring the application of Federal Circuit authority.  See Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1016 (Fed. Cir. 2006).

8

Damages may be calculated in two ways under this statute. "If the record permits the determination of actual damages, namely, the profits the patentee lost from the infringement, that determination accurately measure the patentee's loss. If actual damages cannot be ascertained, then a reasonable royalty must be determined." Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078 (Fed. Cir. 1983). In this fashion, a reasonable royalty is appropriate when actual damages cannot be proven.

The jury awarded Arlington actual damages and a reasonable royalty for patent infringement. Arlington's damages expert, Mark Gallagher ("Gallagher"), testified that lost profits damages due to infringement totaled $2,772,372; the jury awarded $2,772,373. (See Doc. 658 at 70; Doc. 632.) Therefore, the jury awarded 100% of the actual infringement damages sought by Arlington. Provision of a reasonable royalty is only appropriate for those infringing sales for which actual damages are not rewarded. See Hanson, 718 F.2d at 1078; see also P&G v. Paragon Trade Brands, 989 F. Supp. 547, 606 (D. Del. 1997). The jury's reasonable royalty award of $662,278.54 is thus duplicative of the actual infringement damages awarded.

The breach of contract damages are also duplicative of the actual infringement damages. Specifically, the damages awarded for breach of contract arose from the same infringement conduct, concerned the same connector models, and included a lost sales analysis similar to that which formed the basis for Arlington's actual infringement damages. (See Doc. 658 at 97, 100.) The breach of contract damages therefore arose out of the same operative set of facts and served

9

to compensate Arlington a second time for Bridgeport's patent infringement. See Aero Prods., 466 F.3d at 1018 (explaining that damages are duplicative when they compensate for the same injury and arise out of the same set of operative facts). Notably, Arlington does not dispute the duplicative nature of the two awards, but simply invites the court to delay any action until "after all post-trial motions and any appeal have been resolved." (Doc. 737 at 10.) There is no basis for this request, and the court declines the invitation to delay its disposition.[6] The court will disregard the lesser of the two damages awards and reduce the total award to that which the jury provided for breach of contract—$2,780,555.

### 3. Damages Awarded for 802SP

Bridgeport next requests that the court amend the judgment to reflect the fact that Arlington's infringement expert, Christopher Rahn ("Rahn"), "admitted that 10% of the model 802SP Whipper-Snap connectors . . . did not have outwardly sprung members." (Doc. 687 at 12-13.) The court has addressed and rejected this argument in the context of its memorandum and order dated March 2, 2010. (See Doc. 773 at 51.) In short, Rahn testified that 100% of the model 802SP connectors infringed claim 8 of the '050 patent. The jury was entitled to credit that testimony, and it did so when it found that the 802SP literally infringed claim 8. Bridgeport's motion to amend the judgment is accordingly without merit.

---

[6] Arlington urges the court to "enter[] judgment as determined by the jury and after all post-trial motions and appeals have been resolved, adjust[] that judgment as necessary." (Doc. 737 at 11.) The court finds that allowing multiple, duplicative damage amounts to remain in limbo during the pendency of appeal will engender unnecessary confusion for Bridgeport and its creditors. (See Doc. 757 at 9 n.1.)

### B. Arlington's Motion for Prejudgment Interest

Arlington moves to amend the non-final judgment to recoup prejudgment interest on the damages it suffered as a result of Bridgeport's patent infringement and breach of contract. However, in light of the court's ruling to omit the duplicative damages awarded for patent infringement, see supra Part III.A.2, Arlington's request for prejudgment interest on this aspect of the award is moot. The court will therefore restrict its focus to Arlington's petition for prejudgment interest on breach of contract damages.

The award of prejudgment interest in a contract dispute is a matter of legal right under Pennsylvania law.[7] Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., 685 A.2d 141, 148 (Pa. Super. Ct. 1996); Berwick v. Daniel W. Keuler Realtors, Inc., 595 A.2d 1272, 1276 (Pa. Super. Ct. 1991). The prevailing party's "right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment." Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988). "The basic premise underlying the award of prejudgment interest to a party centers on the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party." Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 469 (Pa. Super. Ct. 2003). The

---

[7] Contract law is an issue of substantive state law which in this case requires the court to apply Pennsylvania law to the parties' substantive claims. See Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91-92 (3d Cir. 2008). Neither party disputes the application of Pennsylvania state law to this matter. Accordingly, decisions of the Pennsylvania Supreme Court are binding precedent upon this court, while Pennsylvania Superior Court decisions will be treated as persuasive precedent. See State Farm Fire & Cas. Co. v. Estate of Mehlman, --- F.3d ---, 2009 WL 4827027, at *1 n.2 (3d Cir. Dec. 16, 2009).

11

parties do not dispute Arlington's entitlement to prejudgment interest, but contest the appropriate method of computation.

A party's entitlement to prejudgment interest under Pennsylvania law is "limited to simple interest at no more than the legal rate." Id.; see also Spang & Co. v. USX Corp., 599 A.2d 978, 984 (Pa. Super. Ct. 1991). The parties agree that the legal rate of interest applicable to awards of prejudgment interest under state law is fixed at 6%. See 41 PA. STAT. ANN. § 202. Rather than apply the statutory rate, however, Arlington urges the court to apply the Federal Reserve prime rate compounded quarterly, for this rate will purportedly provide a more accurate means by which to make Arlington whole. (See Doc. 696 at 5.) In justification of its position, Arlington highlights Bridgeport's breach of the 2004 settlement agreement and argues that "the circumstances of this breach of contract claim are highly unusual and warrant application" of a higher rate of interest. (Doc. 762 at 4.)

The court is not persuaded by Arlington's argument and will instead apply well-settled principles of Pennsylvania law.[8] Arlington shall be awarded prejudgment interest from the time of breach—October 15, 2005—through entry of non-final judgment on October 7, 2009. The interest rate will be calculated at the

---

[8] By characterizing the circumstances of Bridgeport's breach of contract as "highly unusual," Arlington implicitly contends that Bridgeport is somehow more blameworthy than the typical defendant. (See Doc. 762 at 4-5.) Prejudgment interest is not a vehicle through which to punish a losing party, however, and is simply intended to make the prevailing party whole. See Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed. Cir. 1983). In addition, the court notes that Arlington's own trial expert, Gallagher, utilized the statutory rate of 6% to calculate prejudgment interest, and it is only in the context of post-trial briefing that Gallagher suggests the Federal Reserve prime rate as the appropriate calculation. (Compare Doc. 734, Exs. 48, 49, with Doc. 640, Exs. 1C-1F.)

12

statutory rate of 6% computed as simple interest. As a result, Arlington is entitled to $195,165 in prejudgment interest through entry of non-final judgment. (See Doc. 640, Ex. 1F.)

**IV.** **Conclusion**

For the foregoing reasons, the non-final judgment entered on October 7, 2009 will be amended as follows: (1) a final judgment of non-infringement shall be entered with respect to Whipper-Snap connector models 3838ASP and 3838SP; (2) the damages awarded for patent infringement will be omitted as duplicative of those apportioned for breach of contract; and (3) Arlington shall be entitled to prejudgment interest for breach of contract damages beginning October 15, 2005 through October 7, 2009. Arlington's prejudgment interest award shall be calculated at the Pennsylvania statutory rate of 6% computed as simple interest.

An appropriate order follows.

S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:      March 3, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLINGTON INDUSTRIES, INC.,** | : | **CIVIL ACTION NO. 3:01-CV-0485** |
| | : | |
| Plaintiff | : | **(CONSOLIDATED)** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **BRIDGEPORT FITTINGS, INC.,** | : | |
| | : | |
| Defendant | : | |

-----------------------------------------------------------------------

| | |
|---|---|
| **BRIDGEPORT FITTINGS, INC.,** | : |
| | : |
| Consolidated Plaintiff | : |
| | : |
| v. | : |
| | : |
| **ARLINGTON INDUSTRIES, INC.,** | : |
| | : |
| Consolidated Defendant | : |

## **ORDER**

AND NOW, this 3rd day of March, 2010, upon consideration of the motion (Doc. 648) to alter or amend judgment, filed by Bridgeport Fittings, Incorporated, and the motion (Doc. 640) to alter or amend judgment, filed by Arlington Industries, Incorporated, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 648) to alter or amend judgment, filed by Bridgeport Fittings, Incorporated, is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED insofar as it requests judgment of non-infringement as a matter of law for Whipper-Snap connector models 3838ASP and 3838SP. However, the Clerk of Court is instructed to defer entry of final judgment on these connector models pending resolution of the remaining post-trial motions.

b. The motion is GRANTED insofar as it requests that the court amend duplicative damage amounts awarded by the jury. The non-final judgment (Doc. 638) is AMENDED as follows:

   i. The damage amounts appearing in Questions 6 and 7 of the Verdict Form are OMITTED.

   ii. The damage amounts appearing in the Verdict Form shall be unchanged in all other respects.

c. The motion is DENIED in all other respects.

2. The motion (Doc. 640) to alter or amend judgment filed by Arlington Industries, Incorporated is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED insofar as it requests an award of prejudgment interest for breach of contract damages beginning October 15, 2005 through October 7, 2009. The total prejudgment interest award for the period October 15, 2005 through October 7, 2009 shall be $195,165.

   b. The motion is DENIED in all other respects.

                 S/ Christopher C. Conner
                 CHRISTOPHER C. CONNER
                 United States District Judge