# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARLINGTON INDUSTRIES, INC.,** : | **CIVIL ACTION NO. 3:01-CV-0485** |
| Plaintiff : | **(CONSOLIDATED)** |
| v. : | **(Judge Conner)** |
| **BRIDGEPORT FITTINGS, INC.,** : | |
| Defendant : | |
| ------------------------------------------------------------------ | |
| **BRIDGEPORT FITTINGS, INC.,** : | |
| Consolidated Plaintiff : | |
| v. : | |
| **ARLINGTON INDUSTRIES, INC.,** : | |
| Consolidated Defendant : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 808) filed by Arlington Industries, Inc. ("Arlington") to lift the stay (see Doc. 776) of the permanent injunctions entered against Bridgeport Fittings, Inc. ("Bridgeport"). (See Doc. 270; Doc. 776). Arlington asserts that, subsequent to the January 20, 2011 opinion of the Federal Circuit (see Arlington Industries, Inc. v. Bridgeport Fittings, Inc., No. 2010-1025 (Fed. Cir. Jan. 20, 2011)) vacating judgment in favor of Bridgeport in parallel litigation brought before the Honorable A. Richard Caputo (see Arlington Industries, Inc. v. Bridgeport Fittings, Inc., Civ. No. 3:06-CV-1105 (M.D. Pa.)) ("Arlington II"), the bases for the stay no longer exist. Bridgeport counters that the

Federal Circuit has yet to issue the mandate in Arlington II vacating judgment in its favor, thus Arlington's motion is premature. Bridgeport also contends that, should the mandate issue, maintenance of the stay is appropriate pending the appeal in the above-captioned case. For the reasons that follow, the court will grant Arlington's motion to lift stay effective upon issuance of the mandate from the Federal Circuit vacating the entry of summary judgment in favor of Bridgeport in Arlington II.

I. **Background**[1]

Arlington and Bridgeport are direct competitors in the electrical conduit fittings market. In 1992, Arlington developed a new type of fitting and eventually obtained several patents on its design including the herein litigated '050 patent. In 1999, Bridgeport introduced its own product line of fittings similar to fittings developed by Arlington. Arlington believed Bridgeport's product infringed on its '050 patent and commenced litigation against Bridgeport on March 19, 2001 by filing a patent infringement suit. On the eve of trial, Arlington and Bridgeport entered into a consent decree wherein Bridgeport admitted to infringing the '050 patent and submitted to an entry of a permanent injunction. (See Doc. 270). The parties filed a stipulation of dismissal on April 15, 2004 (Doc. 251), and the court entered the confession of judgment as an injunction on June 30, 2006. (Doc. 270).

---

[1] The parties are familiar with the underlying factual record—which is voluminous—therefore, the court will set forth only those facts which are relevant to the court's analysis of the pending motion.

Litigation between the parties resumed in December 2005, when Bridgeport sought a declaratory judgment that its new fitting, denominated the "Whipper-Snap," did not infringe the '050 patent. See Bridgeport Fittings, Inc. v. Arlington Indus. Inc., No. 3:05-CV-2622 (M.D. Pa.). That matter was assigned to Judge Caputo. Arlington then countersued alleging patent infringement and breach of the parties' consent decree. The declaratory judgment action was transferred to the undersigned, consolidated with Arlington's suit, and the court reopened the above-captioned matter. (Doc. 267).

On May 31, 2006, Arlington instituted a separate patent infringement suit against Bridgeport alleging infringement of Arlington's '831 patent. See Arlington II. The matter was assigned to Judge Caputo, presumably because it involved a different patent. Arlington later amended its complaint in the matter before Judge Caputo to include certain claims of infringement of the '050 patent. (Arlington II, Doc. 3). Neither party sought consolidation of the above-captioned matter with Arlington II, thus the cases proceeded on distinct but parallel tracks.

After separate Markman hearings, the undersigned and Judge Caputo issued differing claim constructions of claim 8 of the '050 patent. (Compare Doc. 376, at 14 (construing "spring metal adaptor" as "an adaptor made of spring metal"), with Arlington II, Doc. 98, at 17 (construing "spring metal adaptor" as "split spring metal adaptor")). On September 18, 2008, Judge Caputo granted Bridgeport's motion for summary judgment as to non-infringement on the '050 patent in Arlington II based in part on his claim construction. (Id. Doc. 307). The court did not enter final

judgment in Arlington II until almost one year later on September 1, 2009. (Id. Docs. 349-351)

Meanwhile, the undersigned scheduled the instant matter for jury trial commencing on September 14, 2009. On September 1, 2009, the same day that Judge Caputo entered final judgment in favor of Bridgeport in Arlington II, Bridgeport filed a motion to stay trial in the above-captioned matter asserting claim and issue preclusion. (Doc. 561). In a memorandum and order dated September 10, 2009 (Doc. 584), the court denied the motion and the above-captioned matter proceeded to trial.

The jury returned a verdict in favor of Arlington, and Arlington moved for a permanent injunction. (Doc. 641). Bridgeport objected to imposition of a permanent injunction, and alternatively requested a stay of enforcement in the event that an injunction was imposed. (Doc. 649). In a memorandum and order (Doc. 776) dated March 9, 2010, this court simultaneously granted Arlington's permanent injunction request, and Bridgeport's request for stay of that injunction as well as the 2006 injunction pending appeal. On January 20, 2011, the Federal Circuit issued its opinion in Arlington II prompting Arlington's present motion (Doc. 808) to lift the stay of the permanent injunctions. To clarify the bases of the motion and the court's ruling, this court will briefly review its reasoning for issuing the stay, as well as the Federal Circuit's opinion in Arlington II.

4

### A. The Court's Stay of Arlington's 2006 and 2010 Permanent Injunctions

In this court's memorandum and order granting Arlington's permanent injunction request and staying the enforcement of the 2006 and 2010 permanent injunctions, the court first weighed each factor of the four-factor test for a permanent injunction and concluded a permanent injunction was warranted. (Doc. 776, at 6-11). The court then analyzed whether a stay of the permanent injunction was appropriate given the unique circumstance of the conflicting judgment in Arlington II. Although, the court previously concluded that issue preclusion applied to the judgment reached in Arlington II, the court declined to apply the doctrine. (See Doc. 773, at 9-20). Given that holding, the undersigned concluded that Bridgeport had a reasonable possibility of success on appeal with respect to its *res judicata* arguments. (Doc. 776, at 12). The court stated "[i]t is not the inconsistent claim construction in Arlington II that weighs in favor of a stay, but the possibility that the *final judgment* in that matter precludes the jury verdict herein." (Id. at 13).

Balancing the other factors, the court noted the likelihood of irreparable injury to Bridgeport in the loss of customer goodwill and market share, and found that Arlington's injury with a stay was no greater than Bridgeport's injury without a stay. (Id. at 14). In the court's view, the conflicting infringement judgments simply outweighed Arlington's potential injury, and a stay would maintain the position Arlington has occupied since 2006. (Id.). Finally, the court concluded that the

public interest favored a stay because inconsistent judgments inherently undermine the integrity of law. (Id. at 15). Thus, maintenance of the status quo was appropriate. (Id.) See Kawecki Berylco Indus., Inc. v. Fansteel, Inc., 571 F. Supp. 539, 540 (E.D. Pa. 1981) ("The purpose of staying an injunction pending appeal is to preserve the status quo.").

### B. The Federal Circuit Opinion Vacating Arlington II

On January 20, 2011, the Federal Circuit issued its opinion in the appeal of Arlington II. The court vacated Judge Caputo's grant of summary judgment holding that Judge Caputo's claim construction misconstrued "spring metal adaptor" by importing a split limitation from the specifications into the claims. Arlington II, No. 2010-1025, slip op. at 3. The Federal Circuit explained that "the customary and ordinary meaning of the claim term, the specification, the Arlington I construction [which is the construction given by this court in the above-captioned matter], and Bridgeport's admissions all support the construction 'an adaptor made of spring metal.'" Id. at 10. The court declined to adopt Bridgeport's reading of "spring metal adaptor" in which it asserted that "spring" modifies "metal adaptor" rather than denoting the type of metal of which the adaptor is constructed. Id. at 11. The court further declined to import by implication a split limitation into claim 8 of the '050 patent. The court reasoned that the patent did not show a clear intent to limit the claims to "split" embodiments, noted that importing a split limitation improperly discounted substantive differences between the claims, and found that the patent prosecution history did not support a split limitation. Id. at 12-13. The

6

Federal Circuit concluded that "spring metal adaptor" means "an adaptor made of spring metal." Id. at 15.

The decision, however, was not unanimous. Circuit Judge Lourie dissented with respect to the claim construction of the '050 patent. Judge Lourie noted the "muddy, conflicting, and overly formulaic rules" in Federal Circuit jurisprudence with respect to claim interpretation. Id. at 4. The real task, he asserted, is to determine what the inventors meant when they used the language they did. Id. Applying that principle, Judge Lourie concluded that the inventors of the '050 patent made clear that the spring metal adaptor has an opening or split. Id.

On January 24, 2011, Arlington filed the instant motion (Doc. 808) to lift the stay of the 2006 and 2010 permanent injunctions. Arlington asserts that final judgment in favor of Bridgeport has been vacated and, with it, the principal ground for the stay—the court's concern of inconsistent judgments—has evaporated. In its brief in opposition (Doc. 821), filed on February 7, 2010, pursuant to an expedited briefing schedule (see Doc. 819), Bridgeport counters that until the Federal Circuit issues the mandate, final judgment in its favor still exists. Furthermore, Bridgeport claims that should the mandate issue, maintenance of the stay is appropriate pending appeal of the above-captioned matter. Arlington filed its reply (Doc. 825) on February 10, 2011. The matter is now ripe for disposition.

**II.   Discussion**

Pursuant to Federal Rule of Civil Procedure 62(c), "the court may suspend, modify, restore, or grant an injunction" while an appeal is pending. FED. R. CIV. P.

62(c). Thus, the court retains jurisdiction to the lift its stay of the injunctions (Doc. 776) despite appeal of final judgment in the above-captioned matter to the Federal Circuit. See Venen v. Sweet, 758 F.2d 117, 120 n.2 (3d Cir. 1985); see also FED. R. APP. P. 8; FED. R. CIV. P. 62(c). 'When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay.' Auto. Tech. Int'l, Inc. v. Am. Honda Motor Co., Nos. 06-187, 06-391, 2009 WL 2969566, at *2 (D. Del. Sept. 15, 2009) (quoting Canady v. Erbe Elekromedizin GmbH, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)).

### A. Issuance of the Mandate

A judgment or order of the court of appeals is not final until issuance of the mandate. See FED. R. APP. P. 41(c) 1998 advisory committee notes; Mary Ann Pensiero, Inc. v. Lingle, 847, F.2d 90, 97 (3d Cir. 1988) ("An appellate court's decision is not final until its mandate issues.") (citing Finberg v. Sullivan, 658 F.2d 93, 99 (3d Cir. 1981) (en banc)). Until the mandate in Arlington II issues, the Federal Circuit retains jurisdiction and authority to alter its decision. Pursuant to Federal Rule of Appellate Procedure and Federal Circuit Rule 41, "[t]he court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later." FED. R. APP. P. 41(b); F.C.R. 41(b).

Bridgeport asserts that until the issuance of the mandate by the Federal Circuit, Judge Caputo's final judgment remains in full force, and thus continues to

8

raise inconsistent judgment concerns. (Doc. 821, at 10-12). Bridgeport contends that the Federal Circuit may amend or modify its judgment and that the chance of rehearing en banc is good. Bridgeport notes that "the patent law community has taken notice of the split opinion in Arlington II" (Doc. 821, at 8), and points to articles in iP Fronline magazine and on Patently-O, a patent law blog, on the split decision as well as "over 100" blog posts. (Id. at 9). Bridgeport also asserts that "several possible *amici curiae* have expressed interest in supporting Bridgeport's petition for rehearing *en banc*." (Id.) Further armed with a dissenting opinion, Bridgeport submits that its chances of a rehearing grant are greatly enhanced.

Arlington counters that the relevant inquiry is whether Bridgeport can meet its burden that it is *likely* to succeed on the merits of the appeal, thereby warranting continuance of the stay. (Doc. 825 at 6, 9-10). Arlington provides statistics on Federal Circuit grants of rehearing and argues that rehearing is highly unlikely, let alone reversal of the panel decision should rehearing be granted. Arlington further contends that this court need not determine whether the Arlington II appeal is final because the court has already declined to apply issue preclusion in this case. (Id. at 10 n.4; Doc. 773, at 17).

The court declines to engage in a game of "will they or won't they" speculation or to employ mathematical probabilities as to whether the Federal Circuit will grant rehearing en banc in Arlington II. Nor will this court further speculate as to the outcome of such a hearing should the petition (which as of the date of this memorandum has yet to be filed) be granted. Until the Federal Circuit

9

issues the mandate, its judgment is not final. The court will not lift the stay of the injunctions until the mandate has issued.

However, in order to save judicial resources and duplicative efforts by the parties, the court will further address whether maintenance of the stay is appropriate should the Federal Circuit deny the petition for rehearing and issue the mandate vacating judgment in Arlington II.

**B.     Whether to Maintain the Stay Pending Appeal in the Above-Captioned Matter**

As previously noted, '[t]he purpose of staying an injunction pending appeal is to preserve the status quo.' (Doc. 776, at 11 (quoting Kawecki Berylco Indus., Inc. v. Fansteel, Inc., 517 F. Supp. 539, 540 (E.D. Pa. 1981)). The court must inquire: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Feesers, Inc. v. Michael Foods, Inc., Civ. No. 1:CV-04-0576, 2009 WL 1684650, at *1 (M.D. Pa. June 16, 2009). The court must consider each of these elements, balance the equities, and discern whether the movant can demonstrate a likelihood of success on the merits on appeal. See First Amendment Coalition v. Judicial Inquiry & Review Bd., 584 F. Supp. 635, 636-37 (E.D. Pa. 1984) (quoting Evans v. Buchanan, 424 F. Supp. 875, 879-80 (D. Del. 1976), aff'd as modified, 555

F.2d 373 (3d Cir. 1977)); Kawecki, 517 F. Supp. at 540; 11 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2904, at 502-03 (2d ed. 1995).

The court previously engaged in this inquiry in its memorandum and order dated March 9, 2010 granting the stay of Arlington's permanent injunctions. (Doc. 776, at 11-15). The court's analysis was driven largely by conflicting claim constructions. However, should the Federal Circuit mandate in Arlington II issue, resolving the inconsistent claim constructions of claim 8 of the '050 patent in favor of this court's construction, that concern is no longer predominant. Therefore, the court must reassess whether a stay is warranted pending appeal in the above-captioned matter. See FED. R. CIV. P. 62(c).[2]

### 1. **Strong Showing of Likelihood of Success on Appeal**

Bridgeport asserts that it is likely to succeed on appeal in the above-captioned matter because: (1) "[a]lthough this Court was aware of Judge Caputo's claim construction and final judgment prior to trial, it allowed Arlington to present a plethora of prejudicial evidence to support its legally deficient willful infringement claim" (Doc. 821, at 14); (2) the court allowed Arlington to present evidence regarding opinions of counsel Bridgeport received regarding non-accused products (id. at 16); and (3) the court struggled with the "colorable imitation" theory throughout trial, thus raising serious questions of law. (Id. at 17).

---

[2] The court's conclusions with respect to the issuance of a permanent injunction in Arlington's favor remain unchanged. (See Doc. 776, at 6-11).

11

The court notes that the evidence in support of willful infringement was also relevant to Arlington's breach of contract claim (see Doc. 586, at 2-3 n.4; Doc. 599, at 2), that the court gave a clear jury instruction regarding the consideration of that evidence, (see Doc. 663, at 132-137), and the court rendered any possible error harmless when it vacated the jury's finding of willfulness. (Doc. 773, at 20-23, 64). Opinions of counsel evidence also went to willfulness. (See Doc. 663, at 136). The court rejected a challenge at trial to the admission of this evidence on Rule 403 grounds,[3] and that decision will be subject to an abuse of discretion standard of review on appeal. See McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990) (stating that "a trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is arbitrary and irrational").

It is accurate to suggest that the court found a general "paucity of applicable law on the subject of colorable imitation" particularly in the context of an infringement suit. (Doc. 773, at 26 n.10). However, the court's suggestion of a need for appellate clarity or guidance, (see id.; Doc. 655, at 196), does not, *ex proprio vigore*, establish a likelihood of success on appeal. To the contrary, the court denied Bridgeport's motions for judgment as a matter of law and a new trial regarding its concerns over the court's instruction on colorable imitation to the jury and the

---

[3] Bridgeport waived the attorney-client privilege as to the opinions of counsel evidence that were admitted. (See Doc. 656, at 199). However, Bridgeport claimed attorney-client protection as to counsel opinion on the alleged infringing products. Evidence of those opinions was excluded. (See Doc. 600).

12

sufficiency of the evidence. (See id. at 23-30). Although, the parties and the court recognize the "murkiness" of the law on colorable imitation, the court has concluded that its instruction on the law did not represent a fundamental error of law or miscarriage of justice. (Id. at 26 n.10). The weight of this factor is against a stay. Bridgeport has not demonstrated a likelihood of success on appeal.

### 2. **Irreparable Injury to Bridgeport**

Bridgeport claims it will suffer irreparable injury if the stay is lifted in that, as this court previously noted, an injunction will likely cause 100% of Bridgeport's Whipper-Snap sales to flow to Arlington and the resulting loss of customer goodwill and market share may be irreparable. (Doc. 821, at 19; Doc. 776, at 14). Furthermore, Bridgeport contends that sales of its duplex connectors—not at issue in this litigation—will be substantially harmed, as customers prefer to purchase their connectors from a single vendor. (Doc. 821, at 20; Doc. 823 ¶ 5). Bridgeport also asserts that the cost incurred by its customers to switch to Arlington products is a strong disincentive to return to Bridgeport products if Bridgeport succeeds on appeal (Doc. 821, at 20; Doc. 823 ¶ 3).

The court declines to scrutinize the effect of a permanent injunction on an infringer's customers as it is irrelevant to whether Bridgeport will suffer irreparable injury absent a stay. See Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008). The factors that this court previously asserted under this prong as supporting a stay—lost sales, two-supplier market, loss of customer goodwill and market share—are still present, but they are less compelling. Lost sales are

13

considerably lower given the impending expiration date of the patent. Any lost market share is a self-inflicted harm resulting from Bridgeport's infringement. See Broadcom Corp. V. Qualcomm, Inc., 543 F.3d 683, 704 (Fed. Cir. 2008). Bridgeport will undoubtedly suffer both tangible and intangible harm absent a stay, but the harm is less significant than when the court first weighed this factor. This prong slightly favors maintenance of the stay.

### 3. **Substantial Injury to Arlington**

Bridgeport contends that Arlington will not suffer irreparable harm if the stay is continued because the current status quo has been maintained since 2005. (Doc. 821, at 21). Bridgeport further asserts that Arlington will cease to suffer any harm at all from the court's stay in ten months as Arlington's '050 patent expires December 4, 2011. (Id.) Finally, Bridgeport claims that Arlington suffers no irreparable harm from lost sales or market shares because it will receive its lost profits upon affirmance of the jury verdict. (Id.) Thus, "Arlington will receive the same amount of profits regardless of who actually sells [the connectors]." (Id.)

The court has already adjudged Arlington's harm to be irreparable as evidenced by the grant of permanent injunction. (Doc. 825, at 19). Bridgeport's continued sale of products that infringe Arlington's patent denies Arlington the very essence of its patent—the right to exclude competitors from infringing it. Acumed LLC v. Stryker Corp., 551 F.3d at 1328; 35 U.S.C. § 154(a)(1). Further, Arlington has a strict policy not to license to competitors in the two competitor market for electrical conduit fittings. Arlington's harm cannot be properly

14

recompensed by a monetary damages award. If lost profits were sufficient, the court would not have entered a permanent injunction in Arlington's favor. Arlington has indeed suffered irreparable harm and continues to suffer such harm as long as the stay is enforced.

Bridgeport's argument that Arlington is not irreparably harmed because the patent expires in ten months misses the point.[4] The parties have been litigating the matter for over ten years. As matters now stand—ten years and two permanent injunctions later—Bridgeport, the admitted and adjudged infringer (see Doc. 270, 2006 confession of judgment; Doc. 790), is still selling infringing products.

As to this factor, the court previously found that Arlington's injury was no greater than that Bridgeport will suffer without a stay. (Doc. 776, at 14). Further

---

[4] The December 4, 2011 expiration date of the '050 patent weighs in favor of neither party in the present matter. Bridgeport cites to numerous cases in which an impending expiration date of a patent was a factor in the denial of injunctions or a finding that a party will not suffer irreparable harm. See Polymer Techs. V. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996); Woodard v. Sage Prods., 818 F.2d 841, 854 (Fed. Cir. 1987); Humanscale Corp. v. CompX Int'l Inc., No. 3:09-CV-86, 2010 U.S. Dist. LEXIS 42083, at *11; Singer Mfg. Co. V. Better Serv. Sewing Mach. Co., Inc., 131 F. Supp. 146, 147 (S.D.N.Y. 1955). Only Humanscale involved the denial of a permanent injunction post-jury verdict, and the patent at issue had a mere six weeks to expiration. 2010 U.S. Dist. LEXIS 42083. Polymer Techs. and Singer Mfg. Co. both involved the denial of a *preliminary injunction*, and Woodard was an interlocutory appeal by a patentee plaintiff after the district court granted one of several defendants summary judgment as to non-infringement. The procedural postures of those cases are distinct from the instant matter. Here a jury has adjudged Bridgeport to be an infringer of the '050 patent and the court has concluded that Arlington is suffering irreparable injury sufficient to warrant an injunction. (Doc. 776, at 7-11). The court cannot conclude that Arlington has ceased to suffer irreparable harm simply because only ten months remain in the life of its patent.

Arlington's injury was outweighed by the serious question of law posed by the conflicting infringement judgments. (Id.) If a mandate issues vacating judgment in Arlington II, inconsistent judgments will no longer exist. Under such circumstances, the court finds that Arlington's continued injury is substantial and weighs in favor of lifting the stay.

### 4. Public Interest

Finally, Bridgeport asserts that the public interest supports maintenance of the stay. Bridgeport states that its customers have relied in good faith on this court's order staying the injunctions. (Doc. 821, at 25). To lift the stay now, Bridgeport claims, would create confusion in the marketplace and "needlessly punish" Bridgeport's customers. (Id.) These "innocent third-parties" will have their business operations disrupted and be forced to incur changeover costs during difficult economic times. (Id.)

To the extent the infringer's customers represent one part of the public interest, their interests are considered by this court, but, as discussed above, courts should not scrutinize the effect of a permanent injunction on an infringer's customers. See Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1330 (Fed. Cir. 2008). In general, the public interest favors maintenance of a patentee's property rights. See Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006). The court has already determined that the public interest weighs in favor of imposing a permanent injunction against Bridgeport's infringing activities. (Doc. 776, at 10). The court also determined that the public interest favored a stay of that injunction

due to the compelling need to uphold the integrity of law and prevent inconsistent judgments. (Id. at 15). However, the public interest in maintenance of the stay evaporates upon issuance of the mandate vacating judgment in Arlington II. The hardship to Bridgeport's customers becomes a consequence of infringement and the public interest shifts to protection of the patent. Hence, the court finds that the public interest in the enforcement of patents strongly favors lifting the stay.

After balancing these four factors, the court concludes that, upon issuance of the mandate, they no longer favor maintenance of the stay. Bridgeport has not made a strong showing that it is likely to succeed on the merits of appeal in the above-captioned matter, and the public interest favors enforcement of Arlington's patent. Arlington continues to suffer irreparable harm with the stay in place. Although Bridgeport will suffer harm absent a stay, the harm is self-inflicted. "[O]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Broadcom Corp. V. Qualcomm, Inc., 543 F.3d 683, 704 (Fed. Cir. 2008). Therefore, the court will lift the stay on the permanent injunctions upon issuance of the mandate vacating judgment in Arlington II.

**III.   Conclusion**

For the reasons stated above, the court will grant the motion (Doc. 808) to lift the stay of the permanent injunctions entered by this court on March 9, 2010. (See Doc. 776). The lift of stay shall be effective upon issuance of the Federal Circuit mandate vacating judgment in Arlington II.

An appropriate order follows.

                                                    S/ Christopher C. Conner
                                                   CHRISTOPHER C. CONNER
                                                   United States District Judge

Dated:         February 18, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARLINGTON INDUSTRIES, INC.,** : | CIVIL ACTION NO. 3:01-CV-0485 |
| : | |
| Plaintiff : | (CONSOLIDATED) |
| : | |
| v. : | (Judge Conner) |
| : | |
| **BRIDGEPORT FITTINGS, INC.,** : | |
| : | |
| Defendant : | |

-----------------------------------------------------------------------

| | |
|---|---|
| **BRIDGEPORT FITTINGS, INC.,** : | |
| : | |
| Consolidated Plaintiff : | |
| : | |
| v. : | |
| : | |
| **ARLINGTON INDUSTRIES, INC.,** : | |
| : | |
| Consolidated Defendant : | |

## **ORDER**

AND NOW, this 18th day of February 2011, upon consideration of the motion (Doc. 808) to lift stay filed by Arlington Industries, Inc., and for the reasons stated in the accompanying memorandum it is hereby ORDERED that the motion (Doc. 808) is GRANTED upon the issuance of a mandate from the Federal Circuit Court of Appeals vacating judgment in <u>Arlington Industries, Inc. v. Bridgeport Fittings, Inc.</u>, Civ. A. No. 3:06-CV-1105 (M.D. Pa.). Arlington shall notify the court upon issuance of the mandate.

                                                S/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge